IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) CR. NO. 3:05-cr-0234 |
| | ) |
| TYRONE WHITE | ) |

### MOTION FOR SANCTIONS FOR ABUSE OF PROCESS
### AND FOR RETURN OF PROPERTY WRONGFULLY SEIZED

COMES NOW the Defendant, TYRONE WHITE, by and through his undersigned counsel, and moves this Honorable Court to GRANT Sanctions against the United States Government, and the FBI in the above-captioned case. The defendant White also seeks a return of property wrongfully seized. As grounds therefore, the defendant attaches the affidavit of Tyrone White, and shows as follows:

1. On December 7, 2005, this Honorable Court addressed the issue of whether the defense should turn over to U.S. prosecution a digital recording device on which a prior recording of a conversation between Pedro Smith and the Defendant, Tyrone White, once existed, which conversation was inadvertently erased. Based on several legal grounds, this court denied that said evidentiary material be turned over to the Government. (See Court's Ruling of December 9, 2005).

2. On December 17, 2005, the U.S. attorney's office caused a subpoena to be served the defense counsel Julian McPhillips and Allison Highley, and their staff of Sim Pettway and Billy Smith, requiring them to appear before a Grand Jury, and bring with them the digital recording device. Said attorneys

1

and staff, by and through the Hon. Ron Wise, filed a motion to quash said subpoena. On Friday, January 13, 2006, U.S. Magistrate Susan Russ Walker set a hearing on said motion for Tuesday, January 17, 2006, at 8:30 a.m., which would have determined whether said recording device should be produced.

3. Ignoring the two aforesaid prior orders from two U.S. District Magistrate Judges, or notwithstanding the same, the Federal Bureau of Investigation and other law enforcement officers (in a move presumably authorized by the U.S. Attorney's office) raided Defendant Tyrone White's home at 5:30 p.m. on Friday, January 13, 2006, and seized not only the digital recording device, but numerous other items including tapes, cd's, and similar audio records. The said agents also seized Tyrone White's 12 year-old son's computer on which school educational information only existed, and they also seized a Klu Klux Klan knife once placed the defendant White's box at work by an anonymous person at the Auburn Police department. Said knife was evidence in defendant's pending EEOC case, and was not listed in the search warrant describing articles to be taken.

4. The said agents of the FBI also rifled through personal correspondence and other legal papers of Defendant Tyrone White with his attorneys, making notes on the same, blatantly violating defendant's attorney-client privilege guaranteed by the Sixth Amendment of the U.S. Constitution.

5. In addition, the FBI agents seized Tyrone White's son's computer which he needs back, immediately, to use at school.

6. The undersigned avers that, **even though** there was a search warrant for the seizure of certain materials, signed by a third U.S. Magistrate Charles Coody, the underlying affidavit did not show that Charles Coody was ever apprised by the government of the prior rulings of sister U.S. Magistrate judges Delores Boyd and Susan R. Walker, as referenced above, about the digital recording device.

7. The defendant avers that the seizure of the digital recording device and other evidentiary material, despite the prior ruling by Judge Boyd and the setting of a hearing on the same by Judge Walker, constitutes a gross abuse of process, and a violation of the U.S. Constitution, and for which serious sanctions are due to be granted against the government.

WHEREFORE, the premises considered, the undersigned moves this Honorable Court to issue an order to the U.S. to show cause why sanctions for abuse of process should not be granted against the federal agents and the United States government, including, but not limited to, a dismissal of the entire case against defendant White, and other appropriate sanctions. In additional, the defendant seeks a court order, ordering the return of his son's computer, the KKK Knife taken from him, and any other objects or tapes not related to the digital recording device. Further, given the prior rulings of this court, the defendant also requests this Court order that the federal government return defendant's digital recording device.

RESPECTFULLY submitted this the 16th day of January, 2006.

        TYRONE WHITE

        /s/ Julian L. McPhillips, Jr.
        JULIAN L. MCPHILLIPS, JR.
        Attorney for the Defendant
        ASB-3744-L74J
        P.O. Box 64
        Montgomery, AL 36101

**OF COUNSEL:**
MCPHILLIPS SHINBAUM, LLP
P.O. BOX 64
MONTGOMERY, AL 36101
(334) 262-1911

## CERTIFICATE OF SERVICE

I certify that, on this date, I have served a copy of the foregoing upon the Government by electronic filing, and by mailing an additional courtesy copy of same to the Government's attorneys at the addresses below on this the 16th day of January, 2006:

    Hon. Todd A. Brown
    Assistant United States Attorney
    P.O. Box 197
    Montgomery, Alabama 36101

        /s/ Julian L. McPhillips, Jr.
        JULIAN L. MCPHILLIPS, JR.
        Attorney for the Defendant

## AFFIDAVIT

**STATE OF ALABAMA**
**COUNTY OF MONTGOMERY**

My name is **Tyrone White**, and I do solemnly swear that the following is true and correct in every particular:

1. I am a defendant in the criminal action bought by the U.S. in the case entitled, **United States of America vs. Tyrone White**, Case no. 3:05-CR-234.

2. I was present in court on December 7, 2005, when U.S. Magistrate Judge Delores Boyd addressed whether I should turn over to the U.S. prosecutor a digital recording device on which a prior recording of a conversation between Pedra Smith and me existed, before being inadvertently erased. I was present when Judge Boyd ruled, based on several legal grounds, that I was not required to turn it over.

3. Subsequently, on December 17, 2005, I was also served with a subpoena to appear before a grand jury to produce the same recording device. My attorneys filed a motion to quash that subpoena, and on Friday, January 13, 2006, U.S. Magistrate Judge Susan Russ Walker for a hearing for Tuesday, January 17, 2006, at 8:30 a.m. (The very next business day).

4. On Friday, January 13, 2006, at 5:30 p.m., (after the federal court house was closed and not to reopen until 3 days later on Tuesday, January 17, 2006) my Opelika house was raided by 13 FBI officers and/or other law enforcement officials from Opelika or Lee County, who arrived, unannounced, in 9 police cars, with lights flashing, disrupting the peace of

my neighborhood. The officers flashed a search warrant, a copy of which is attached as Exhibit A. As can be seen, the search warrant sought my digital recording device and any tapes, cassettes, CD's or similar audio records.

5. My first response to the FBI agents was "how can you seek this when Judge Boyd has already ruled in federal court that I am not required to produce the device." I also said there was a hearing coming up on Tuesday morning on my attorney's motion dealing with the same subject matter.

6. As I stated this, an FBI agent (whose name I believe was "Gavin") said: "This is not up for discussion. You have two choices. You can sit there and be quiet, or you can go out the door." I told Gavin that I was in the process of going to church, but that this was my house. Then Gavin told me I would do better to leave.

7. However, the federal agents were ransacking my house, over my protest, and I felt I should stay. They were throwing my clothes around, dumping laundry baskets out on to the floor. Then Gavin, in a very ugly way, and in a cold, harsh unprofessional manner, tried to intimidate me. It was so bad that one of the other FBI agents (Hetrick) tried to apologize for how rude his boss (Gavin) was towards me.

8. At this time, I saw two agents, Gavin/Hetrick, rifling through my correspondence and legal papers from my attorney, reading the same, and taking notes on the whole thing, page by page. This further upset me, as I thought my correspondence with my attorney enjoyed an attorney-client privilege.

9. The agents, in ransacking my house, also went through all my wife's purses, and looked under pillowcases and mattresses, in my bedroom and in my closets. At one point, they made me and my wife both get out of our own bedroom.

10. When the agents first arrived, they said "You know what we're here for, don't you." I said, "No, I don't," and then they answered, "the recording device." I said, "I wanted to call my attorney Julian McPhillips (since we have a hearing in a couple of days) to find out if this is legal." First, agent Gavin told me I couldn't call my attorney, but then agent Hetrick said I could. The two agents went back and forth, but finally concluded that it was okay for me to call Julian. So I did. Upon reaching him, my attorney counseled me to be calm and cooperative.

11. Unfortunately, the agents didn't stop searching my home when I gave them the recording device (despite earlier saying they'd stop whenever they got it.) Instead, the agents continued searching my home tooth and nail.

12. At one point, agent Hetrick said, "don't worry. Everything I take out of the home I'll let you see." However, I only got to see one bag, and not a second bag, even though I asked to see it. Both bags were taken outside to FBI agent Christian Deep.

13. I didn't discover until the next day that the FBI agent also seized the "Klu Klux Klan" knife that was anonymously put in my office box at the Auburn police department. That was a valuable piece of evidence, which I intended to use in my EEOC case against the City of Auburn, and the Auburn police

department for race discrimination. This knife was not listed on the search warrant as an item to be seized, nor was it listed on the Inventory (attached as Exhibit B) by the FBI as one of the items it seized. I therefore very much want to have this knife returned to me.

14. One of the agents who was taking a lot of pictures, started taking pictures of my wife, in her night clothes, as she was sitting on the couch. My wife objected, but the agent continued to take two more pictures of her in her night clothes, over her objections, and he never apologized to her or me.

15. One of the worst parts of the whole ordeal was how agent Gavin got "into my face," as his face was literally only inches away from mine, as he screamed at me, "You need to de-escalate." My wife wasn't sure what he meant, and said so. Then agent Gavin got in back to my face again, inches away, and started barking orders at me, trying to intimidate me.

16. In all my 16 years of work as an Auburn police officer and 7 years before that as a U.S. Marine, I have never been treated so disrespectfully and rudely, and subjected to such intimidation as I was in this raid on my house by the FBI on Friday, January 13, 2006.

_____
TYRONE WHITE

Before me, the undersigned Notary Public, appeared Tyrone White, known to me, who, after being duly sworn, did state that the above-stated facts are true and correct in every particular, on this the 16th day of January, 2006.

_____
NOTARY PUBLIC
My Commission Expires: 11-25-07

# United States District Court

_____ MIDDLE _____ DISTRICT OF _____ ALABAMA _____

| | |
|---|---|
| **In the matter of the Search of**<br>(Name, address or brief description of person, property or premises to be searched)<br><br>**1503 Covington Ave, Opelika, Alabama,** | **SEARCH WARRANT**<br><br>CASE NUMBER: |

TO: _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by __Tom Hetrick, Federal Bureau of Investigations,__ who has reason to
               Affiant

believe that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)
**1503 Covington Ave, Opelika, Alabama,**

in the _____ Middle _____ District of _____ Alabama _____ there is now

concealed a certain person or property, namely (describe the person or property)

**See Attachment A**

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before __January 23, 2006__
                              Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime -- 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to __Charles S. Coody__
as required by law.                        U. S. Judge or Magistrate Judge

__JANUARY 13, 2005__   **@ 3:27 p.m**   at   __Montgomery, Alabama__
Date and Time Issued               City and State

__CHARLES S. COODY, U.S. Magistrate Judge__     _____
Name & Title of Judicial Officer              Signature of Judicial Officer

EXHIBIT A

# United States District Court

_____MIDDLE_____ DISTRICT OF _____ALABAMA_____

**In the matter of the Search of**
(Name, address or brief description of person, property or premises to be searched)

**1503 Covington Avenue, Opelika, Alabama**

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER:

I ____Tom Hetrick_____ being duly sworn depose and say:

I am a(n) ____Special Agent, Federal Bureau of Investigation____ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**1503 Covington Avenue, Opelika, Alabama,**

in the _____Middle_____ District of ____Alabama____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

**See Attachment A**

which is (state one or more bases for search set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

**contraband or property that constitutes evidence of the commission of a criminal offense,**

concerning a violation of Title ____18____ United States Code, Section(s)__1512;1951__

The facts to support the issuance of a Search Warrant are as follows:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

__JANUARY 13, 2006_____ at __Montgomery, Alabama__
Date                                                                         City and State

__CHARLES S. COODY, U.S. Magistrate Judge__    _____
Name & Title of Judicial Officer                                    Signature of Judicial Officer

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

January 13, 2006.

1. My name is Tom Hetrick. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). I have worked for the FBI for 9 years. I have been assigned and have investigated a large number of cases in my career, including bank robberies, civil rights cases, domestic terrorism, wire fraud and white collar crime.

2. On January 13th, 2006, I spoke with SA Christian Deeb, who is currently assigned to the Opelika Resident Agency of the FBI, concerning the case currently pending against Tyrone White. Mr. White is under indictment in the Middle District of Alabama for federal corruption and witness intimidation charges, SA Deeb being the Case Agent.

3. According to SA Deeb, on September 29, 2005, a meeting was held at the United States Attorney's Office in Montgomery, Alabama, at the request of Mr. White's attorney, Julian McPhillips. McPhillips initiated the meeting, apparently in order to play a recording for the US Attorney's Office that he (McPhillips) claimed would exonerate his client. McPhillips further claimed that on the recording was one of the Government's witnesses admitting to Mr. White that he never paid him any money to "fix tickets". Present during the meeting were McPhillips, his assistant Sim Pettway, a private investigator hired by McPhillips, Billy Smith, Assistant United States Attorney Todd Brown, FBI Special Agents Christian Deeb and Paul Houston, Auburn Police Department Officers Lt. Willie Smith, Lt. Jerry Holder, and Sgt. Chris Murray. Mr. White was present, but waited outside the room during the meeting on the advice of his attorney.

4. At approximately 9:35 A.M., Sim Pettway stepped out of the meeting room to retrieve the recording device, generally described as being less than six inches by five inches by two inches in size and metallic in color, from Mr. White. Pettway then played the recording in the presence of those previously listed. The investigators in the meeting were not told and are uncertain whether the recording was or is digital or analogue, the latter requiring external recording media such as micro-cassette tapes.

5. It was evident during the playing of the recording, however, that Mr. McPhillips had not bothered to listen to the recording before playing it, as the recording not only did not exonerate Mr. White, but in fact unambiguously depicted Mr. White clearly threatening and intimidating Padro Smith, one of the victims listed in the indictment. As the recording continued to broadcast White threatening and coercing Smith, Mr. McPhillips had Pettway turn the recorder off and return it to Mr. White.

6. No one from the US Attorney's Office or FBI took the device because it was in the possession of a defense attorney. Instead, the US Attorney's Office subpoenaed the device from Mr. McPhillips after receiving permission from the Witness Immunity Unit of the United States Department of Justice in Washington, DC. However, both FBI Agents and the Auburn Police Officers present for the meeting made it abundantly clear

that the recording was considered at that time to be evidence of a crime, namely witness intimidation, and that the recording would be sought at a later time. Indeed, Mr. McPhillips went so far as to concede out loud and in the presence of all that a person could conclude that what was contained on the recording might be viewed as witness intimidation. The information contained in the recording became the basis for the currently pending witness intimidation Indictment against White.

7. In moving to quash the subpoenas issued in effort to obtain the recording, Mr. McPhillips sent a letter dated December 6, 2005, to the US Attorney's Office claiming that his office no longer had possession of the recording. McPhillips stated that his firm had returned the recording to Mr. White, and White had taken the device home. McPhillips also claimed that White had inadvertently erased the recording that had been played at the US Attorney's Office. Mr. McPhillips also repeated these statements in open court. In the same letter, McPhillips stated that, "We have asked Tyrone to bring the physical tape with him to court tomorrow, in hopes that modern technology can restore the conversation". The recording, whether in digital or analogue format, was not, however, made available to the Government. The residence described in Attachment B of this Affidavit is Tyrone White's home.

8. Mr. White has been under supervised release as a condition of his bond, although he is allowed to drive under certain circumstances. Because the Defendant is the last known person to have possession of the recording and recording device, and since he is under house arrest, there is probable cause to believe that the recording and device are at his residence or in his vehicle as described in Attachment B of this Affidavit.

9. On January 10, 2006, SA Deeb spoke with technically trained FBI Special Agent William L. Kinnaird, who is familiar with digital recorders similar to the Defendant's. Special Agent Kinnaird advised that the recording played at the US Attorney's Office might possibly be recovered from the recorder, even if it has been erased.

10. Affiant is aware through training and experience that digital information can be reproduced to any number of digital recording and/or storage devices, such as computer hard drives, disks, Compact Disks, DVDs, Thumb Drives, Zip Drives and such other devices and media as are set forth in Attachment A of this Affidavit. In like manner analogue recordings may be copied and otherwise reproduced onto other analogue media, or onto digital media.

11. On January 13, 2006, a check of automated records contained in the Alabama Law Enforcement Tactical System for Tyrone White shows four vehicles registered in his name, specifically a white 2003 Chevrolet medium duty vehicle bearing Alabama license 43D483H, a silver 2002 Chevrolet Impala LS bearing Alabama license 43G871B, a red 2001 Ford Expedition XLT bearing Alabama license 43D571R, and a red 1997 Ford Mustang GT bearing Alabama license TYJOYTJ.

12. Based on the above, Affiant believes that probable cause exists to believe that Tyrone White is in possession of a recording device and/or recording media which contained and

may still contain evidence of a crime, specifically Witness Intimidation as described in Title 18, United States Code, Section 1512(b)(3), and that this device is located in his residence or vehicles as described in Attachment B of this Affidavit.

Attachment A

Items to be Seized

1. Any and all audio recording devices including but not limited to: digital and analog voice recorders.

2. Any and all storage media and/or devices including but not limited to: tapes, cassettes, cartridges, streaming tape, computer disks, disk drives, tape drives, data disks, magnetic media, floppy disks, CD-ROMs, CD-RWs, CD-Rs, DVDs, memory sticks, thumb drives, computer flash memory, tape systems and hard drives.

3. Any form of magnetic or electronic coding on computer media, or media capable of being read by a computer, with the aid of computer related equipment, including floppy diskettes, CD-ROMs, CD-Rs, CD-RWs, DVDs, fixed hard drives or removable hard disk cartridges, software or memory in any form. The search procedure for electronic data contained in computer operating software or memory devices, where performed onsite or in a laboratory, or other controlled environment, may include the following techniques:

    a. The seizure of any audio recording devices, computers, or computer related equipment or data, including floppy diskettes, CD-ROMs, CD-Rs, CD-RWs, DVDs, fixed hard drives or removable hard disk cartridges, software or memory in any form containing material described above, and the removal thereof from the PREMISES for analysis by authorized personnel;
    b. Surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the marking it contains and opening a drawer believed to contain pertinent files);
    c. "Opening" or cursorily reading the first few pages of such files in order to determine their precise contents;
    d. "Scanning" storage areas to discover and possibly recover recently deleted or erased data;
    e. Scanning storage areas for deliberately hidden files; or
    f. Performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

Attachment B

Description of places to be searched

1503 Covington Avenue, Opelika, Alabama

    The residence is described as a single story home, cream or light beige in color, with white trim, black shutters, and black in color shingle roof. The residence has the numbers 1503 on it. A shed, cream or light beige in color, is located in the back yard.

    The residence has a short concrete drive leading to the house. The mailbox on the front of the property is wooden, and is labeled "Tyrone White", "War Eagle", and has the number 1503 on it. The curb in front of the residence has 1503 painted on it.

**UNITED STATES DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF INVESTIGATION**
Receipt for Property Received/Returned/Released/Seized

File # _____

On (date) JAN. 13, 2006

item(s) listed below were:
☐ Received From
☐ Returned To
☐ Released To
☒ Seized

(Name) TYRONE WHITE
(Street Address) 1503 COVINGTON AVE
(City) OPELIKA, AL

Description of Item(s):
- 1 PANASONIC MODEL NO. RR-QR100 RECORDER
- 1 GE AUTO VOICE RECORDER W/ TAPE
- 1 BOX OF 3 (THREE) MICRO CASSETTE TAPES
- 1 GATEWAY TOWER COMPUTER CPU
- 2 (TWO) AUDIO TAPES
- 1 AUDIO TAPE
- 1 AUDIO TAPE
- 10 (TEN) CD'S
- 3 (THREE) CD'S
- 3 (THREE) AUDIO TAPES
- 1 AUDIO TAPE

EXHIBIT B

Received By: _____   Received From: _____
                (Signature)                              (Signature)