## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CR. NO.  3:05-CR-0234-WHA** |
| | ) | |
| **TYRONE WHITE, and** | ) | |
| **ADAM FLOYD** | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT MOTION
## FOR JUDGMENT OF ACQUITTAL OR FOR NEW TRIAL

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files the above-styled response to Defendants' Joint Motion for Judgment of Acquittal or for New Trial (Doc. #191, hereinafter "Joint Motion") and this Court's Order (Doc. #192), as follows:

1.     On November 3, 2006, after a four-day jury trial, Defendant Tyrone White ("White") was found guilty of conspiring to violate the Hobbs Act (Count 1), seven substantive Hobbs Act counts (Counts 4-10), and two counts relating to witness intimidation and evidence tampering (Counts 13-14).  (Tr. 579:16-580:1)[1]. The jury acquitted White of Counts 2 and 3.  (Tr. 579:18-20).  The jury also found White's codefendant Adam Floyd ("Floyd") guilty of conspiring to violate the

Hobbs Act (Count 1) and of two substantive Hobbs Act counts (Counts 4-5).  (Tr. 580:4-8).  The jury acquitted Floyd of Counts 2 and 3.  Id.

2.   On November 14, 2006, Defendants' filed their Joint Motion.  (Doc. #191).  The gist of the Joint Motion is that the United States presented insufficient evidence that White and Floyd's conduct affected interstate commerce.

3.   On November 15, 2006, this Court ordered the United States to respond to the Joint Motion.  (Doc. #192).   Specifically, this Court ordered the United States "to include in its reply as to each separate Hobbs Act conviction citations to a trial transcript of all evidence which the Government contends was sufficient for the jury to find beyond a reasonable doubt that the actions of the Defendants affected interstate commerce." Id.

4.   Because of unforeseen delays in producing the trial transcript, the United States moved for an extension of time for filing its response to today's date, December 21, 2006.  (Doc. #195).  This Court granted the Government's motion on December 5, 2006.  (Doc. #196).

## I. ISSUES

5.  **Issue One**.  Did the United States present sufficient evidence to establish

---

[1] References to the trial transcript are by page number and not by volume.

the actions of the Defendants affected interstate commerce?  And, does the alleged failure to do so warrant an acquittal?

6.  **Issue Two**.  Did this Court err in giving the United States' requested jury instruction that "[i]t is only necessary for the Government to prove a minimal effect on interstate commerce."  And, if such was error, is a new trial warranted?


## II.  STANDARDS OF REVIEW

### Issue One (Sufficiency of Evidence)

7.  The appropriate method for a convicted defendant to seek a judgment of acquittal after a jury has returned a guilty verdict is by way of a motion filed pursuant to Fed. R. Crim. P. 29(c).  The motion must be filed within 7 days after the jury verdict is returned, or after the court discharges the jury, whichever is later.  Fed. R. Crim. P. 29(c)(1).  This Court

> "must view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. The prosecution need not rebut all reasonable hypotheses other than guilt. The jury is free to choose between or among the conclusions to be drawn from the evidence presented at trial, and the district court must accept all reasonable inferences and credibility determinations made by the jury."

United States v. Miranda, 425 F.3d 953, 959 (11th Cir. 2005), quoting United States v. Sellers, 871 F.2d 1019, 1021 (11th Cir. 1989) (internal citations omitted in

3

Miranda). See also Burks v. United States, 437 U.S. 1, 16 (1978) ("The prevailing rule has long been that a district judge is to submit a case to the jury if the evidence and inferences therefrom most favorable to the prosecution would warrant the jury's finding the defendant guilty beyond a reasonable doubt."); United States v. Hernandez, 433 F.3d 1328, 1334 (11th Cir. 2005) ("That [the defendant's] statements and behavior are subject to innocent explanations is also immaterial. A jury is free to choose among reasonable constructions of the evidence.") (citations and quotations omitted), cert. denied., 126 S. Ct. 1635 (2006); United States v. Castleberry, 116 F.3d 1384, 1387-88 (11th Cir.) (sufficiency of evidence must be considered in light most favorable to Government with all inferences and credibility choices drawn in favor of jury's verdict, which should be affirmed if any reasonable construction of evidence would allow jury to find defendants guilty beyond a reasonable doubt), cert. denied, 522 U.S. 934 (1997), citing United States v. Adair, 951 F.2d 316, 318 (11th Cir. 1992), and quoting United States v. McKinley, 995 F.2d 1020, 1025 (11th Cir. 1993).

8.    The defendant, not the Government, carries a "heavy burden" in challenging the sufficiency of evidence supporting his convictions. See United States v. McCarrick, 294 F.3d 1286, 1290 (11th Cir. 2002) (noting the defendant's sufficiency of the evidence burden on appeal); United States v. Evans, 149 F.

Supp. 2d 1331, 1336, 1345 (M.D. Fla. 2001) (in considering defendants' post-trial motions for judgment of acquittal, trial court noted defendants have burden of establishing that no reasonable jury could have found them guilty beyond a reasonable doubt), aff'd in part, vacated in part, 344 F.3d 1131 (11th Cir. 2003). See also United States v. Irving, 452 F.3d 110, 119 (2d Cir. 2006) (in holding that trial court did not err in denying the defendant's Rule 29 motion, court noted that defendant did not meet his "weighty" burden); United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003) (noting that defendant who, pursuant to Rule 29, challenges sufficiency of evidence supporting his conviction bears a heavy burden); United States v. Scarpa, 913 F.2d 993, 1003 (2d Cir. 1990) (noting that defendant's burden to persuade trial court that no rational trier of fact could have found elements of offense charged beyond a reasonable doubt is a "'very heavy burden'").  The upshot of the foregoing is simply stated – "[t]he jury's verdict must stand unless no trier of fact could have found guilt beyond a reasonable doubt." United States v. Lyons, 53 F.3d 1198, 1202 (11th Cir.), cert. denied, 516 U.S. 937 (1995).

### Issue Two (Improper Jury Instruction)

9.    The appropriate method by which to challenge an improper jury

instruction, post-verdict, is by way of motion for new trial. Fed. R. Crim. P. 33. This motion must be filed within 7 days of the return of the guilty verdict. Fed. R. Crim. P. 33(b)(2). Thus, as it relates to the allegation of an improper jury instruction, this Court should distinguish this allegation of trial error from the earlier issue of evidentiary insufficiency. The former calls for a determination of whether "a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, ...incorrect instructions," and "implies nothing with respect to the guilt or innocence of the defendant." Burks, 437 U.S. at 15. See also, *e.g.*, United States v. Terlingo, Nos. CR. 99-525-06, -07, and -08, 2001 WL 474407, at *2 (E.D. Penn. Apr. 30, 2001) (noting that trial court's denial of defendant's requested jury instructions should be addressed in motion for new trial rather than in motion for judgment of acquittal); United States v. Ellis, 493 F. Supp. 1092, 1098 (M.D. Tenn. 1979) (noting that any error in trial court's jury instructions is not cognizable ground for motion for post-trial entry of judgment of acquittal), aff'd, 617 F.2d 604 (6th Cir.) (table), cert. denied, 449 U.S. 840 (1980); United States v. Markiewicz, 978 F.2d 786, 804 (2d Cir. 1992) (vacating conviction and remanding for new trial for failure to charge knowledge as element of offense where evidence was sufficient to prove that missing element), cert. denied, 506 U.S. 1086 (1993).

10.  "The district court has broad discretion in formulating a jury charge as long as the charge as a whole is a correct statement of the law." <u>Castleberry</u>, 116 F.3d at 1389, citing <u>United States v. Perez-Tosta</u>, 36 F.3d 1552, 1564 (11th Cir. 1994).  A conviction should stand "unless, after examining the entire charge, [ ] the issues of law were inaccurately presented, the charge included crimes not contained in the indictment, or the charge improperly guided the jury in such a substantial way as to violate the defendant's right to due process." <u>United States v. Mcintosh</u>, No. 05-14442, 2006 WL 3084651, at *1 (11th Cir. Oct. 31, 2006); <u>see also</u> <u>Castleberry</u>, 116 F.3d at 1389.

## III.  FACTS

11.  Auburn Police Department ("APD") Officer Brett Howell ("Howell") testified that he was approached by White about dismissing a traffic ticket that Howell had issued to a person named Danie Clark ("Clark") on August 19, 2003, for driving with a revoked license.  (Tr. 29:14-22), Gov. Exh. 1[2].  Howell related that White had told him "Danie was working on getting his *fines paid*[, ] his *license reinstated*[,] and it would help [Clark] out a lot if [he] would help him out

---

[2] Government Exhibits are exhibits introduced at trial and are referenced by that number.  Not all which were introduced at trial are referenced in this response, thus the attached exhibits may not be in numerical order.

with it." (Tr. 29:24-30:1) (emphasis added). The back of the traffic citation reveals that it was *nol prossed* per officer request; that the municipal court ordered no fine or court costs; and, a receipt that verifies no court costs were imposed for the driving while revoked charge. Gov. Exh. 1, p. 2.

12. Clark confirmed that he had been issued a citation for driving with a revoked license and that he had not *paid the ticket*. (Tr. 48:13-20). Instead he paid $800 to Floyd to have the ticket fixed. (Tr. 51:13-20). Clark established that he would have been otherwise charged with a fine and court costs in city court; that he did not know what the exact costs were; but, combined they would have been significantly less than $800. (Tr. 63:4-9).

13. APD Officer Brian Lynn ("Lynn") testified that he issued a driving while revoked citation to Sawelija Tyree Floyd ("Tyree") on December 8, 2003. (Tr. 66:23-67:6), Gov. Exh. 3. After being cited, Floyd approached Tyree and facilitated the dismissal of Tyree's ticket. (Tr. 78:10-81:3). White then asked Lynn to *nol pros* Tyree's citation, and Lynn complied. (Tr. 67:7-14). Lynn admitted that he did not know what the exact municipal court fine for this charge was, but that it was less than $800. (Tr. 72:23-73:11). Lynn also admitted that he did not know what the fee was for reinstating a person's driver's license, but that he did could not dispute that it was at least fifty dollars. (Tr. 74:15-75-7). Page

8

two of Gov. Exh. 3 reveals an annotation on the reverse of the traffic citation that the citation was *nol prossed* "per City"; that, as a consequence of the ticket being *nol prossed*, the municipal court ordered no fine or court costs be imposed; and, a receipt that verifies no court costs were imposed for the *nol prossed* driving while revoked charge. That same receipt establishes that a charge of driving with a suspended license carries with it a fine and court cost of at least $89.50. Gov. Exh. 3, p. 2. Tyree confirmed that he was charged with driving with a revoked license but that he got it "taken care of" by paying Adam Floyd for around $350. (Tr. 78:7-12, 79:20-21).

14. APD Officer Myron Thornton testified that on May 9, 2003, he issued Recco Cobb ("Recco") a citation for fleeing and attempting to elude. (Tr. 102:25-103:1), Gov. Exh. 6. Recco testified that he was issued that citation, but that he did not "go down to city hall and *pay* this ticket." (Tr. 135:4-13) (emphasis added). Instead, he paid Floyd $900 to have the ticket fixed. (Tr. 135:4-13). White approached Thornton about dismissing this ticket, but Thornton declined to do so. (Tr. 103:18-22). Ultimately, Thornton learned that, over his objection, the ticket had been dismissed. (Tr. 103:23-24). The back side of the ticket Thornton issued to Recco is annotated with a statement that the charge was *nol prossed* in order to satisfy a community service agreement made with "Off. Tyrone White." Gov.

9

Exh. 6, p. 2, (Tr. 138:22-24). Recco testified that, after a conversation with Floyd on Recco's court date, it was White who arranged a meeting with APD Officer Brad Bass ("Bass") to have the ticket *nol prossed*. (Tr. 137:8-138:21). Bass confirmed the meeting with Recco and White, where he agreed to drop the fleeing/attempting to elude police charges, and to previously charging Recco with trespassing. (Tr. 162:18-163:3, 163:5-6, 163:19-24). Recco admitted to being charged trespassing and with being issued tickets for driving with a revoked license and speeding, all of which he pled guilty to and for *which he paid fines to the city*. (Tr. 149:8-17, 152:3-9). A receipt confirms this. Gov. Exh. 6, p. 3.

15. Thornton also testified that he had been approached by White about agreeing to *nol pros* a speeding ticket that Thornton had issued to Jamillah McCray ("McCray") on March 21, 2003. (Tr. 104:4-15:22), Gov. Exh. 4. The second page of Gov. Exh. 4 reveals an annotation on the reverse of the traffic citation that the citation was *nol prossed* "per City" and that the municipal court ordered no fine or court costs be incurred in McCray's case. Thornton testified that the fines and court costs associated with a speeding violation were *$112*. (Tr. 115:22-25) (emphasis added). McCray confirmed that she had been issued a speeding ticket and that she had assumed Floyd, her employer at the time, had paid the ticket for her out of money from her paycheck. (Tr. 122:15-123:4, 123:12). McCray also

10

recalled that the amount taken out of her paycheck was equal to or around the cost of the ticket—"a hundred and some-odd dollars." (Tr. 123:5-9).

16.   APD Corporal Scott Mingus ("Mingus") testified to arresting Monkevin Cobb ("Monkevin") in August, 2002, for illegally carrying a pistol without a permit and with resisting arrest.   (Tr. 183:11-13, 184:14-15), Gov. Exh. 37. Monkevin confirmed the arrest. (Tr. 191:16-17).  White later offered to "make that gun disappear" for $250 and Monkevin paid him.  (Tr. 192:17-193:10, 193:16-18). Sometime later, White confirmed the matter was "taken care of."  (Tr. 194:1-3). And, the matter was ultimately dismissed because the weapon was found to be missing.  (Tr. 194:6-11).

17.   Monkevin also testified about an incident in 2004, where he was using drugs in a housing project from which he had been banned. (Tr. 194:17-195:9). After being alerted to the presence of law enforcement, Monkevin ran from where he was, following others in the area, but slipped and fell.  (Tr. 195:16-21).  One of the law enforcement officers turned out to be White, who ultimately caught Monkevin and apprehended him.  (Tr. 194:21-22, 195:22-23).  White took between $700 and $900 in cash from Monkevin and released Monkevin even though Monkevin was in possession of drugs and a gun.  (Tr. 196:13-197:8).  White never charged Monkevin with trespassing, possessing the drugs, or possessing the

11

firearm.  (Tr. 197:13-25).

18.  APD Corporal Jason Crook ("Crook") testified that on September 12, 2004, he cited Daniel Todd ("Todd") for speeding, and later arrested him for driving under the influence and carrying a concealed weapon without a permit. (Tr. 211:5-212:8), Gov. Exh. 8-10.  After being approached by White to drop Todd's charges, Crook told White that he could not do anything about Todd's DUI, but he did not object to dropping the remaining charges as a professional courtesy. (Tr. 212:24-213:10).  Crook identified the case action summary sheet where on September 30, 2004, the court *nol prossed* the firearms charge "*without costs;*" an accurate description of the agreement in the case, according to Crook.  (Tr. 213:11-214:1) (emphasis added), Gov. Exh. 11.  Todd confirmed the DUI, speeding, and concealed weapons arrest.  (Tr. 220:8-11).  He further related that White offered to help him out with the tickets for a thousand dollars.  (Tr. 223:7-18).  As it turns out, Todd pled guilty to the DUI charge, as Crook had intimated would be necessary.  (Tr. 229:1-2).  The penalty for Todd's DUI guilty plea was that he "paid *the fine* on the DUI charge."  (Tr. 229:4-5) (emphasis added).  That fine, according to Todd, was $1,100, which he paid.  (Tr. 229:10-16).  Todd was also mandated to take classes and his license was suspended.  (Tr. 229:15-16).  As it related to the *nol prossed* speeding charge, Todd agreed that the fine and court

costs he would have had to pay would have been around $112. (Tr. 230:1-8). The back side of Todd's ticket includes a court order that Todd incur no fine or court costs for the speeding charge. Gov. Exh. 8, p. 2.

19.   APD Officer Jim Perry ("Perry") testified that he cited an individual named Elhadji Ka ("Ka") on February 26, 2005, for speeding. (Tr. 233:14-23), Gov. Exh. 12. At the request of White, Perry voided Ka's speeding ticket, for which he should have received a $112 fine. (Tr. 234:12-25, 239:7-9). Ka confirmed receiving the speeding ticket and trying to pay the fine, but was unable to do so for technical reasons. (Tr. 241:5-14). Ka then admitted to talking with White about the ticket and agreeing to pay him $250 to have the ticket voided so that his insurance rates were not increased. (Tr. 241:15-242:22). Ka also verified the original fine for the speeding ticket was $112. (Tr. 248:21-22).

20.   APD Officer Michael Creighton ("Creighton") testified to citing a person named Jarvus Ware ("Ware") with improper lane change and usage, improper window tint, and DUI, on April 23, 2005. (Tr. 250:20-251:14), Gov. Exh. 13-15. After some initial reservations of a request by White, Creighton agreed to drop the improper lane change and window tint charges, and agree to allow Ware to plead to the DUI as a youthful offender, where Ware incurred *fines, court costs* and other penalties. (Tr. 254:9-256:24, 261:25-262:3). The second

13

page of Exhibits 14 and 15 both reveal annotations on the reverse of the traffic citations that the lane change and window tint citations were *nol prossed* "per City" and that the municipal court ordered no fine or court costs be imposed in those two cases. Gov. Exh. 14-15. The back side of the DUI ticket shows that Ware was allowed to plead as a youthful offender and incurred $600 in fines and $92 in court costs. Gov. Exh. 13, p. 2. Ware admitted to paying White a thousand dollars to fix his tickets, pleading as a youthful offender to the DUI, and paying fines and court costs. (Tr. 285:2-19, 292:19-25).

21. Lashawn Henderson ("Henderson"), a City of Auburn court referral officer, testified that she was responsible for evaluating individuals arrested on alcohol charges. (Tr. 369:12-21). Henderson testified that there was a graduated series of fines, which included a $115 fine for the level one program, a fine of $250 for the level two program, and between $3,000 and $10,000 for the level three program. (Tr. 370:19-371:5). Henderson further testified that there were additional costs associated with required office visits to meet with Henderson; those costs include $50 for the initial visit and $20 for routine visits. (Tr. 371:23-372:13).

22. Andrea Jackson, the City of Auburn's finance director and treasurer for the past twelve years testified that automobiles used by APD, firearms used by

14

APD, and gasoline used to fuel APD vehicles, are all funded out of the city's general fund. (Tr. 419:8-423-15). A portion of the city's general fund is comprised of municipal court fines and court costs. (Tr. 421:1-3), Gov. Exh. 34. A decrease in municipal court fines or costs results in a corresponding reduction in the ability to purchase out-of-state goods. (Tr. 427:16-19).

23. APD Captain Jerry Holder provided a list of firearm manufacturers who supply APD with firearms that are issued to APD officers. (Tr. 404:5-19). Bureau of Alcohol, Tobacco, and Firearms ("ATF") Special Agent ("SA") Theron Jackson testified that he reviewed the manufacturers who provide APD with firearms, and confirmed that the firearms purchased by the City of Auburn, for use by its police officers, all moved in interstate commerce. (Tr. 416:11-418:6).

24. Chris Creel ("Creel"), an employee of McPherson Oil, testified that his company has the contract to provide fuel for the City of Auburn. (Tr. 429:24-430:4). Creel explained that gasoline supplied to the city of Auburn (1) comes from crude oil obtained outside of the state of Alabama; (2) is refined out of the state of Alabama; (3) is transported via pipeline from Texas to either Columbus, Georgia (95% of the time) or Montgomery, Alabama (the remainder of the time); (4) if originating from Columbus, Georgia, is transported by tractor-trailer from Georgia to Alabama; (5) is billed for based on information forwarded from

15

Alabama to Texas via phone line; and (6) has its corresponding billing figures forwarded via Internet telephone connection from Texas to McPherson's Atlanta, Georgia office. (Tr. 430:14-435:14).

25.   Agent Deeb testified that, prior to being employed by the FBI, he was an engineer with General Motors who worked at an Ohio Chevy/Pontiac assembly plant in charge of manufacturing and assembly processes. (Tr. 471:11-16). Agent Deeb went on to explain that, after inspecting the Ford Crown Victorias used by APD, he verified, through the police cars' Vehicle Identification Numbers, that they were manufactured in Canada. (Tr. 472:22-473:17).

## IV.  ARGUMENT

### Issue One (Sufficiency of Evidence).

26.   Based on arguments of defense counsel and the specific direction contained in the order of this Court, the United States will address the allegation of what White and Floyd contend is the United States' failure to present sufficient evidence that their conduct had an effect on interstate commerce. Thus, the United States addresses in, at most a cursory fashion, elements other than ones concerning effects on interstate commerce, or counts of conviction which do not have as element of the offense proof of some effect on interstate commerce. If the United

States has misconstrued arguments of defense counsel, or this Court's direction, the United States respectfully requests an opportunity to more fully discuss the non-commerce related elements or counts.

27.   In order for the jury to find White and Floyd guilty of conspiring to violate the Hobbs Act, the United States must prove beyond a reasonable doubt (1) the existence of an agreement to achieve an unlawful objective; (2) White and Floyd's knowing and voluntary participation in the conspiracy; and, (3) the commission of an overt act in furtherance of the conspiracy.   United States v. Gupta, 463 F.3d 1182, 1194 (11th Cir. 2006); United States v. Hansen, 262 F.3d 1217, 1246 (11th Cir. 2001), cert. denied, 535 U.S. 1111 (2002); Pattern Jury Instructions, Criminal Cases, Eleventh Circuit (2003 Revision), Instruction 13.1. "[B]ecause the crime of conspiracy is predominantly mental in composition, it is frequently necessary to resort to circumstantial evidence to prove its elements." United States v. Garcia, 405 F.3d 1260, 1270 (11th Cir. 2005), quoting United States v. Pineiro, 389 F.3d 1359, 1369 (11th Cir. 2004); see also United States v. Diaz, 190 F.3d 1247, 1254 (11th Cir. 1999) ("An agreement may be proved by either direct or circumstantial evidence and a common scheme or plan may be inferred from the conduct of the participants or from other circumstances. The government is not required to prove that a defendant knew every detail or that he

participated in every stage of the conspiracy."), cert. denied, 534 U.S. 878 (2001).

28.    As it relates to both the conspiracy count and substantive counts generally, when viewed in the light most favorable to the Government, with all inferences and credibility choices drawn in favor of the jury's guilty verdict, there was proof beyond a reasonable doubt: (1) that fines and court costs that are ordered by the City of Auburn municipal court are placed in the city's general fund (Tr. 421:1-3); (2) that automobiles used by APD, firearms used by APD, and gasoline used to fuel APD vehicles, are all funded out of the city's general fund (Tr. 419:8-423:15); (3) that the firearms purchased by the City of Auburn for use by APD's police officers all moved in interstate commerce (Tr. 416:11-418:6); (4) that the gasoline used by APD moved in interstate commerce and that billing for that fuel is accomplished via communications which affect interstate commerce (Tr. 430:14-435:14); (5) that the Ford Crown Victoria vehicles used by APD moved in interstate commerce (Tr. 472:22-473:17); and, (6) that any decrease in municipal court fines or costs results in an equivalent reduction in the capacity to purchase out-of-state goods.  (Tr. 427:16-19).

29.  In order to prove White and Floyd guilty beyond a reasonable doubt of a substantive Hobbs Act violation, the United States must prove that White, either alone or aided and abetted by Floyd, (1) induced a person to part with property; (2)

18

that he did so by means of extortion under color of official right; and (3) that the extortionate act delayed, interrupted, or affected interstate commerce. <u>Untied States v. Eaves</u>, 877 F.2d 943, 947 (11th Cir. 1989), <u>cert</u>. <u>denied</u>, 493 U.S. 1077 (1990); Pattern Jury Instructions, Criminal Cases, Eleventh Circuit (2003 Revision), Instruction 66.2. Circumstantial evidence may be presented to prove the interstate commerce element. <u>United States v. Hersh</u>, 297 F.3d 1233, 1254, n. 31 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 537 U.S. 1217 (2003), <u>United States v. Romano</u>, 482 F.2d 1183, 1193 (5th Cir. 1973),[3] <u>cert</u>. <u>denied</u>, 414 U.S. 1129 (1974).

30.    **<u>Count 1 (Conspiracy)</u>**.    The "crime of conspiracy is an offense separate, distinct, and independent from the outcome on substantive counts properly brought." <u>United States v Griffin</u>, 699 F.2d 1102, 1107 (11th Cir. 1983), citing <u>United States v. Feola</u>, 420 U.S. 671, 694 (1975); <u>Iannelli v. United States</u>, 420 U.S. 770, 777 & n. 10 (1975); <u>Pinkerton v. United States</u>, 328 U.S. 640, 644, (1946); <u>United States v. Ocanas</u>, 628 F.2d 353, 361-362 (5th Cir.1980); <u>United States v. Beil</u>, 577 F.2d 1313, 1315 n. 2 (5th Cir.1978), <u>cert</u>. <u>denied</u>, 440 U.S. 946 (1979); <u>United States v. Carman</u>, 577 F.2d 556, 567 n. 12 (9th Cir.1978) (acquittal on substantive count does not preclude conviction for conspiracy that has as its

---

[3] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

object that substantive offense).  The jury had before it evidence supporting an agreement to take money in exchange for favorable treatment given to Recco Cobb and Jamillah McCray, as described below in discussion of Counts 4 and 5.  See also ¶¶ 14, 15, *infra*.  Additionally, the jury had before it evidence of an agreement to commit overt acts in connection with *nol prossing* Danie Clark's driving with revoked license charge—not paying his ticket, but instead paying $800 to Floyd, after which White had his ticket *nol prossed* with no fines or court costs being imposed.  (Tr. 48:13-20, 51:13-20, 63:4-9), Gov. Exh. 1, see also ¶¶ 11, 12, *infra*.  Finally, there was evidence of an agreement between White and Floyd to *nol pros* Tyree Floyd's driving while revoked citation, in exchange for $350.  See ¶ 13, *infra*.  Accordingly, sufficient evidence existed for the jury to find that an agreement between White and Floyd to violate the Hobbs Act existed.

31.  **Count 4**.  In Count 4, White and Floyd are charged with violating the Hobbs Act by accepting money from Recco Cobb in exchange for favorable treatment with regard to a traffic citation issued to him for fleeing and attempting to elude.  The United States presented sufficient evidence that interstate commerce was affected.  Recco Cobb admitted that had he not had the ticket fixed, he would have had to "go down to city hall and *pay this ticket*."  (Tr. 135:4-13) (emphasis added).  Recco Cobb's admission implied that he would have otherwise had to pay

for this violation. The jury found that not having to make this payment to city hall could affect commerce as described in paragraph 28, *infra*, and Recco Cobb's testimony to that effect gave them sufficient evidence to so conclude.

32. **Count 5**. In Count 5, White and Floyd are charged with violating the Hobbs Act by accepting money from Jamillah McCray in exchange for favorable treatment with regard to a traffic citation issued to her for speeding. The United States presented sufficient evidence that interstate commerce was affected. After the ticket issued to McCray was *nol prossed*, the court ordered that no fines or costs be imposed. Gov. Exh. 4, p. 2. APD Officer Thornton testified that the fine that would have been imposed was $112. (Tr. 115:22-25). McCray recalled that the amount she gave to Floyd, by means of a payroll deduction, was equal to or around the cost of the speeding ticket—"a hundred and some odd dollars." (Tr. 123:5-9). Daniel Todd, APD Officer Jim Perry, and Elhadji Ka verified that a speeding fine was $112 (Tr. 230:1-8, 239:7-9, 248:21-22). The jury found that this fine could affect commerce as described in paragraph 28, *infra*, and it had sufficient evidence to do so.

33. **Count 6**. In Count 6, White is charged with violating the Hobbs Act by accepting money from Monkevin Cobb in exchange for taking care of a weapons charge. The United States presented sufficient evidence that interstate commerce

was affected.  After paying White $250, his firearms charge was dismissed because the weapon could not be found.  (Tr. 192:17-193:10, 193:16-18, 194:6-11).  The jury had before it the fact that a firearms charge carried with it costs because APD Officer Crook testified that his agreement to *nol pros* a firearms charge with Daniel Todd included the benefit of no costs, as confirmed by the case action summary sheet in Daniel Todd's case.    (Tr. 213:11-214:1), Gov. Exh. 11.    This circumstantial evidence is sufficient to support the jury's conclusion that the costs associated with a firearms charge affects interstate commerce as described in paragraph 28, *infra*.

34.  **Count 7**.  In Count 7, White is charged with violating the Hobbs Act by accepting money from Monkevin Cobb in exchange for not charging Monkevin Cobb with a weapons charge, a trespassing charge, and a marijuana possession charge.  The United States presented sufficient evidence that interstate commerce was affected.  After giving White $700-900, White did not charge Monkevin Cobb with trespassing, with carrying a weapon (even though he knew Monkevin Cobb to be prohibited from carrying a weapon, based on the facts surrounding Count 6), or with a marijuana possession offense.  (Tr. 196:13-197:8).  As in Count 6, the jury had before it the fact that a firearms charge carried with it costs because APD Officer Crook testified that his agreement to *nol pros* a firearms charge with Daniel

Todd included the benefit of not having to pay costs, which was confirmed by the case action summary sheet in Daniel Todd's case. (Tr. 213:11-214:1), Gov. Exh. 11. Additionally, the jury had before it Recco Cobb's testimony that a trespassing charge is accompanied by fines due the City of Auburn. (Tr. 149:16-17, 152:3-9). The jury had before it evidence that the fine for trespassing referred to by Recco Cobb was at least $245. Gov. Exh. 6, p. 3. Finally, the jury had before it information that a marijuana possession charge can carry with it fines and costs of at least $250. Gov. Exh. 3, p. 2. This evidence is sufficient to support the jury's conclusion that the costs associated with these charges affected interstate commerce as described in paragraph 28, *infra*.

35. **Count 8**. In Count 8, White is charged with violating the Hobbs Act by accepting money from Daniel Todd in exchange for favorable treatment with regard to a speeding citation and a weapons charge. The United States presented sufficient evidence that interstate commerce was affected. The officer who charged Daniel Todd with these offenses stated that the agreement to *nol pros* weapons charge included he not incur any "costs." (Tr. 213:11-214:1). The case action summary corresponding to the weapons charge includes an annotation that the charge be *nol prossed* "without costs." Gov. Exh. 11. This implies that Daniel Todd would have otherwise had to pay the costs to the municipal court. Daniel

23

Todd also would also have had to pay a $112 fine for speeding, had he not had that charge *nol prossed*. (Tr. 230:1-8). APD Officer Thornton, Jamillah McCray, Daniel Todd, APD Officer Perry, and Elhadji Ka all verified that a speeding fine was $112, or around that amount. (Tr. 115:22-25, 123:5-9; 230:1-8, 239:7-9, 248:21-22). The jury found that the fine and costs Daniel Todd should have paid on the weapons charge and the speeding violation could affect commerce as described in paragraph 28, *infra*, and it has sufficient evidence to do so.

36. **Count 9**. In Count 9, White is charged with violating the Hobbs Act by accepting money from Elhadji Ka in exchange for favorable treatment with regard to a speeding citation issued to him. The United States presented sufficient evidence that interstate commerce was affected. After attempting to pay the fine, Elhadji Ka agreed to pay White $250, rather than paying the fine, so that there would not be a negative impact on his insurance premiums. (Tr. 241:5-22). APD Officer Thornton, Jamillah McCray, Daniel Todd, APD Officer Perry, and Elhadji Ka all verified that a speeding fine was $112, or around that amount. (Tr. 115:22-25, 123:5-9; 230:1-8, 239:7-9, 248:21-22). The jury found that the fine Elhadji Ka did not pay, but should have paid, the municipal court for speeding could affect commerce as described in paragraph 28, *infra*, and it has sufficient evidence to do so.

24

37.  **Count 10**.  In Count 10, White is charged with violating the Hobbs Act by accepting money from Jarvus Ware in exchange for having window tint and lane change traffic violations dropped, and for allowing him to plead as a youthful offender to a DUI charge.     The United States presented sufficient evidence that interstate commerce was affected.  Jarvus Ware paid White a thousand dollars to fix the traffic violations and to allow him to plead as a youthful offender to the DUI charge.  (Tr. 285:2-25).  The municipal court annotated that no fine or costs would be imposed for the traffic violations, implying that fines and costs were a possibility had the tickets not been *nol prossed*.  Gov. Exh. 14-15.  As a result of the youthful offender DUI plea, Ware was charged $600 in fines and $92 in court costs.  Gov. Exh. 13, p. 2.  In comparison, Daniel Todd was charged $1,100 for his adult DUI.  (Tr. 229:10-16).  From this, the jury could reasonably infer that the difference in fines was related to the nature of the youthful offender plea.  Additionally, the jury could infer from the absence of any testimony by Ware of having to participate in a court referral program, that he may have benefited from not having to pay fines or office visit costs associated with that program.  Daniel Todd was clear that he had to participate in classes as a result of his adult DUI conviction.  (Tr. 229:14).  Accordingly, the jury had sufficient evidence before it to draw the reasonable inference that fines and costs associated with the dismissal of

the two traffic citations, combined with the different treatment Ware received for his youthful offender DUI as compared to Daniel Todd's adult DUI, affected commerce as discussed in paragraph 28, *infra*. See Miranda, 425 F.3d at 959.

38. **Counts 13 and 14**. Counts 13 and 14 involve convictions for witness intimidation and evidence tampering, neither of which have as an element of the offense any proof of an effect on interstate commerce.

## Issue Two (Improper Jury Instruction).

39. The Court's instruction in this matter included, among other instructions, the following paragraph:

> "While it is not necessary to prove that the Defendant specifically intended to affect commerce, it is necessary that the Government prove that the natural consequences of the acts alleged in the indictment would be to delay, interrupt or affect 'commerce,' which means the flow of commerce or business activities between a state and any point outside of that state. *It is only necessary for the Government to prove a minimal effect on interstate commerce*."

Court's Instructions to the Jury, at 10 (emphasis added). The first sentence of this paragraph is verbatim from the related pattern jury instructions. Pattern Jury Instructions, Criminal Cases, Eleventh Circuit (2003 Revision), Instructions 66.1 and 66.2. The remaining sentence (highlighted above)—the only part of the charge

objected to by Floyd[4] (Tr. 566:10-25)—is a correct statement of the law in this Circuit. United States v. Verbitskaya, 406 F.3d 1324, 1331-32 (11th Cir. 1995) ("This Circuit has long held that the jurisdictional element under the Hobbs Act can be met simply by showing that the offense had a 'minimal' effect on commerce."), cert. denied, __ U.S. __, 126 S.Ct. 1095 (2006); See also Castleberry, 116 F.3d at 1387 ("[t]he Government still needs to show only a minimal effect on interstate commerce to support a conviction under the Hobbs Act."); citing United States v. Atcheson, 94 F.3d 1237, 1242 (9th Cir. 1996), cert. denied, 519 U.S. 1156 (1997), United States v. Bolton, 68 F.3d 396, 399 (10th Cir. 1995), cert. denied, 516 U.S. 1137 (1996), United States v. Stillo, 57 F.3d 553, 558 n.2 (7th Cir.), cert. denied, 516 U.S. 945 (1995), and, United States v. Farmer, 73 F.3d 836, 843 (8th Cir.), cert. denied, 518 U.S. 1028 (1996).

40.  Because the complained-of sentence, and the entire charge as a whole, is a correct statement of the law, and because there is no evidence the charge improperly guided the jury in such a substantial way as to violate the White and Floyd's right to due process, this Court did not abuse its discretion by including it in formulating the charge ultimately given to the jury. United States v. Richardson, 233 F.3d 1285, 1292 (11th Cir. 2000), cert. denied, 532 U.S. 913

---

[4] White objected to no part of this Court's charge. (Tr. 566:7-8).

(2001); United States v. Smith, 231 F.3d 800, 807 (11th Cir. 2000), cert. denied,

532 U.S. 1019 (2001); United States v. Schlei, 122 F.3d 944, 969 (11th Cir. 1997),

cert. denied, 523 U.S. 1077 (1998); Castleberry, 116 F.3d at 1389. Accordingly,

White and Floyd's request for a new trial, on the ground that this Court erred by

including the complained of sentence in its instruction, is due to be denied.


## V. CONCLUSION

41.  White and Floyd have failed to meet their "heavy burden" of proving

that the Government's evidence was insufficient to establish that their actions

affected interstate commerce in at least a minimal way. McCarrick, 294 F.3d at

1290; Verbitskaya, 406 F.3d at 1331; and, Castleberry, 116 F.3d at 1387.

Accordingly, given that the evidence, when viewed in a light most favorable to the

Government, allowed this jury, a reasonable one, to find White and Floyd guilty

beyond a reasonable doubt, their Joint Motion for judgment of acquittal pursuant to

Fed. R. Crim. P. 29(c) is due to be denied, and the jury's verdict should be allowed

to stand.  Id.

42.  Further, because this Court's entire charge, taken as a whole, accurate

presented the issues of law, and did not improperly guide the jury in such a

substantial way as to violate White and Floyd's due process rights, their Joint

Motion for new trial, filed pursuant to Fed. R. Crim. P. 33, is due to be denied.

<u>McIntosh</u>, 2006 WL 3084651, at *1; <u>Castleberry</u>, 116 F.3d at 1389.

     Respectfully submitted, this the 21st day of December, 2006.

               LEURA G. CANARY
               UNITED STATES ATTORNEY


               /s/ Todd A. Brown
               TODD A. BROWN
               Assistant United States Attorney
               Post Office Box 197
               Montgomery, Alabama 36101-0197
               (334) 223-7280
               (334) 223-7135 fax
               ASB-1901-O64T
               Todd.Brown@usdoj.gov

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CR. NO.  3:05-CR-0234-WHA** |
| | ) | |
| **TYRONE WHITE, and** | ) | |
| **ADAM FLOYD** | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Russell T. Duraski, Esq. (White), and, Jeffery C. Duffey, Esq. (Floyd).

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Todd A. Brown
TODD A. BROWN
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
ASB-1901-O64T
Todd.Brown@usdoj.gov

30