```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF ALABAMA
                      NORTHERN DIVISION

UNITED STATES OF AMERICA,    *
                             *
    Plaintiff,               *
                             *
V.                           *    CR.NO. 3:05-CR-234-WHA
                             *
TYRONE WHITE and             *
ADAM FLOYD,                  *
                             *
    Defendants.              *
```

**JOINT REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANTS'
JOINT MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL**

Come now defendants, jointly by counsel, and in reply to the Government's Response to Defendants' Joint Motion for Judgment of Acquittal/or New Trial, submit the following:

1. The defendants filed a joint motion for judgement of acquittal or new trial on November 14, 2006, (Doc.191).

2. On November 15, 2006, the court ordered the government to respond and: "specifically to include in its reply as to each separate Hobbs Act conviction citations to a trial transcript of all evidence which the Government contends was sufficient for the jury to find beyond a reasonable doubt that the actions of the Defendants affected interstate commerce." (Doc.192).

3. The Government filed its response on December 21, 2006. (Doc.199).

1

4.   On December 22, 2006, this Court ordered defendants to file their reply on or before January 16, 2007.  (Doc.200).

## I.

## Did the United States Present Sufficient Evidence to Establish the Actions of the Defendants Affected Interstate Commerce?

5.   It was the Government's burden at trial to prove beyond a reasonable doubt that the defendants' actions had an "affect" on interstate commerce.  <u>United States v. Castleberry</u>, 116 F. 3rd 1384, 1386 (11th Cir. 1997).

6.   A common dictionary definition of the word "affect" is: "To have an influence on or effect a change in." <u>The American Heritage College Dictionary</u>, Houghton Mifflin Company, page 22, (Third Edition 2000).  Therefore, it stands to reason that in order for the actions of the defendants to have an affect on interstate commerce in this case their actions must have had an influence on or effected a change in interstate commerce.  The Government argues that this was proven because: (A) fines and court costs ordered by the City of Auburn Municipal Court are placed in the City's general fund; (B) out of that general fund the City purchases automobiles, firearms and gasoline that has moved in interstate commerce; and (C) "that any decrease in the

municipal court fines or costs results in an equivalent reduction in the capacity to purchase out-of-state goods." See Government's response at page 18. The Government fails in this argument because the Government has failed to prove beyond a reasonable doubt that there has been an "affect" on interstate commerce. The Government failed to prove any specific economic loss or than any economic loss had an "affect" on interstate commerce. Any economic loss that can be inferred through the Government's proof is inferred through mere speculation which is insufficient. See <u>United States v. Perez-Tosta</u>, 36 F. 3rd 1552, 1557 (11th Cir. 1994) (reasonable inferences, and not mere speculation, must support the jury's verdict.")

    7. Defendants Adam Floyd and Tyrone White were jointly charged in Counts 1 through 5 of the indictment. Defendant White was additionally charged in Counts 6 through 12. This Court previously granted Defendant Floyd's motion for judgment of acquittal to the extent that there was no evidence to sustain any conspiracy for any action after the events involved in Count 5 of the indictment. (See Doc.186, p.4). Therefore, the sufficiency of the evidence argument of the Government against Defendant Floyd is limited to Counts 1 through 5.

**COUNTS 1 THROUGH 5**

8. There was no evidence of specific economic loss for costs or fines for Count 2 (Danie Clark, Gov. Exhibit 1, driving while revoked); or Count 3 (Sawelja Tyree Floyd, Gov. Exhibit 3, driving while revoked); or in Count 4, (Recco Cobb, Gov. Exhibit 6, fleeing/attempting to elude or in Count 5 (Jamillah McCray, Gov. Exhibit 4, speeding).

9. The Government points out in its Response that Recco Cobb previously paid fines to the city for certain offenses including driving with a revoked license and that Auburn Police Officer Myron Thornton testified that the fines and court costs for speeding was $112.00. See pages 9 through 10 of the Government's Response. In relation to Recco Cobb, Government Exhibit 6, page 3 shows a balance of $242.00 for a driving while license revoked ticket in 2002. That balance does not reflect what specifically it is for, whether or not it includes restitution or any other monies or fees and is not sufficient proof of the costs and fine that would have been imposed had there been a conviction in Cobb's case. As for Jamillah McCray, Officer Thornton testified that he thought the routine costs associated with speeding generally is the $112.00 figure because he said "I

have heard the judge say $112.00." (TR.115:22-24). This did not directly relate to McCray. Defendants contend that this is insufficient proof of a specific economic loss that had an "affect" on interstate commerce.

    10.  Defendants contend that even if the above was proof of a specific economic loss it is so miniscule as to have no "affect" on interstate commerce. In other words, if Counts 2 and 3, driving while revoked, are counted as two $242.00 fines and costs, and Count 5, speeding, is counted as $112.00, that gives a total of $596.00. These offenses occurred in 2003. See Government Exhibits 1,2,4 and 6. According to Government Exhibit 34 [1] which was the City of Auburn General Fund Balances for years 1999-2005, the total revenues in 2003 were $36,024,052.00 and total expenditures for 2003 were $31,630,167.00. Therefore, the revenues exceeded the expenditures by some $4,393,885.00. The figure $596.00 as compared to the afore mentioned is .0000165 of the revenues and .00001887 of the expenditures. Therefore there is not even a minimal affect on interstate commerce. (There was no evidence as to when the fiscal year begins so even these figures may or may not be accurate depending on the date of the ticket, when the fine would have been

---

[1] Government Exhibit 34 is attached to this reply.

imposed, or when the fines would have been collected. Further, Andrea Jackson, the City Treasurer testified that the municipal judge will sometimes order payments of fines/costs be spread over months or years. (Tr.428: 16-19). It is mere speculation to show when the instant fines/costs, if ordered, would have been collected.  In addition thereto according to Ms. Jackson court costs are shared with the state and any figures given in the aforementioned testimony as to fines and court costs would not be accurate, but mere speculation on the part of the Government. (Tr.421:1-5).

    11.  According to the testimony of Andrea Jackson who was the City of Auburn finance director and treasurer, a loss of approximately $500.00 in court costs or fines would not impair the ability of the City to purchase goods nor would it have any affect on their bond rating:

> Q. Okay. In looking at the chart, can you say that a failure of the city court in Auburn to receive, lets say, approximately $500 in fines for the year 2004 diminished or depleted the city to the point where it impaired their ability to purchase goods that year?
>
> A. $500
>
> Q. Yes
>
> A.  No, but it would diminish our plan - - our plan to budget by $500.00.

* * *

>     Q.   Is a loss of $500 in any one year
>          going to affect your bond rating?
>
>     A.   Not $500, no.

(TR. 426:10-18; TR. 428:8-10).

12.  Andrea Jackson also testified that the City receives grants to purchase items such as automobiles and guns, but she could not testify specifically what item was purchased, when it was purchased or by what source of money was used to purchase - either grants or general fund money. (Tr.424: 19-25, 425: 1-13).  This further blurred any proof of an affect on interstate commerce.

**COUNTS 6 THROUGH 12**

13.  Defendant Tyrone White, in addition to being charged in Counts 1 through 5, was also charged in Counts 6 through 12: Count 6 involved Monkevin Cobb in 2002 - carrying pistol without permit, resisting arrest, Government Exhibit 37; Count 7 involved Monkevin Cobb in 2004 - trespassing, possession of drugs and firearm for which there was never an arrest;  Count 8 involved Daniel Todd in 2004 DUI, carrying pistol without license, speeding, Government Exhibit 8 - 11; Count 9 involved Elhadj Ka in 2005 - speeding, Government Exhibit 12; Counts 10 and 11 involved Jarvus Ware in 2005 - improper lane change, window tint and DUI, Government Exhibit 13-18; Count 12 involved Pedro Smith

7

in 2005 - no proof of insurance, fleeing, reckless driving. Government Exhibit 19-21. The Government failed to prove any specific economic loss in any of those counts. The charges were either nolle prossed or no charges were ever brought. In fact there were costs and fines paid in some instances, but these were not Hobbs Act violations. See Government Response, pp. 11-14. The Government responds that in the case of Monkevin Todd, Count 8, that Todd thought that the court costs and fine for the speeding ticket would have been $112.00 (see pages 12 and 13 of the Government Response); and that Officer Jim Perry understood that the fine and court costs for the speeding ticket against Mr. Ka (Count 9) would be $112.00 (see page 13 of Government response). The same argument reflected at paragraphs 5-12 above apply here, except the amounts are even smaller, $112.00 for 2004 (Count 8) and $112.00 for 2005(Count 9).

14. The Government's proof must be based upon reasonable inferences and not mere speculation. United States v. Perez-Tosta, 36 F. 3rd 1552, 1557 (11th Cir. 1994). To paraphrase United States v. Lopez, 514 U.S. 549, 115 Sup.Ct. 1624, 1628-29, 131 L. Ed. 2nd, 626 (2000): the evidence offered by the Government is so indirect, remote or speculative to the point that no rational basis exists for

8

concluding that there was a sufficient affect on interstate commerce.

Therefore, it is the defendants contention that judgment of acquittal should be granted on all Hobbs Act Counts.

**II.**

**Did this Court Err in Giving the United States Requested Jury Instruction That "[I]t Is Only Necessary for the Government to Prove a Minimal Affect on Interstate Commerce?**

The defendants stand on their original argument presented in the Joint Motion for Judgment of Acquittal/New Trial.

Respectfully submitted this 16th day of January, 2007.

s/Jeffery C. Duffey
JEFFERY C.  DUFFEY
Attorney for Defendant
Adam Floyd
600 South McDonough Street
Montgomery, AL  36104
Phone: 334-834-4100
Fax: 334-834-4101
email: jcduffey@aol.com
Bar No.  ASB7699F67J

<pre>
                              s/Russell T. Duraski
                              RUSSELL DURASKI
                              Attorney for Tyrone White
                              6332 Woodmere Blvd.
                              Montgomery, AL 36117
                              Phone: 334-260-9733
                              Fax: 334-260-0735
                              email: duraskilaw@charter.net
                              Bar No.ASB1792R47R
</pre>

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Todd Brown and
David Cook
AUSA
P.O. Box 197
Montgomery, AL 36101

<pre>
                              Respectfully submitted,

                              s /Jeffery C. Duffey
                              JEFFERY C.   DUFFEY
</pre>