**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Cr. No. 3:05cr234-WHA |
| | ) | (WO) |
| | ) | |
| TYRONE WHITE and ADAM FLOYD. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. FACTS AND PROCEDURAL HISTORY**

This matter is before the court on the Defendants' Joint Motion for Judgment of Acquittal or New Trial (Doc. #191).

The Defendants, Tyrone White and Adam Floyd, were jointly charged in Count 1 of the Superceding Indictment with conspiracy, and in Counts 2, 3, 4, 5 with aiding and abetting one another to violate 18 U.S.C. § 1951 ("the Hobbs Act"). Counts 6, 7, 8, 9, 10, 11, and 12 charge Defendant Tyrone White ("Defendant White") only with violations of the Hobbs Act. Charges against Defendant White in Counts 13 and 14 involving violations of 18 U.S.C. § 1512 are not a part of the pending motion.

The jury trial in this case began on October 31, 2006. After the Government rested, the Defendants moved for Judgment of Acquittal and the court granted the motion as to the element of fear in the substantive Hobbs Act counts, and as to conspiracy charges for any actions occurring after the events in Count 5. The court also granted the motion as to Counts 11 and 12 which had been brought solely against Defendant White.

On November 3, 2006, the jury found Defendant Adam Floyd ("Defendant Floyd") guilty of Counts 1, 4, and 5 and found Defendant White guilty of Counts 1, 4, 5, 6, 7, 8, 9, 10, 13, and

14. The Defendants have moved for judgment of acquittal or new trial as to the conspiracy and substantive Hobbs Act counts.

## II.  RELEVANT LEGAL STANDARDS

### A.  MOTION FOR JUDGMENT OF ACQUITTAL

A defendant carries a heavy burden in challenging the sufficiency of evidence supporting a conviction.  *See United States v McCarrick*, 294 F.3d 1286, 1290 (11th Cir. 2002).  The court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Hernandez*, 433 F.3d 1328, 1335 (11th Cir. 2005).

The court views the evidence in the light most favorable to the government, making all inferences and credibility choices in the government's favor.  *United States v. Majors*, 196 F.3d 1206, 1210 (11th Cir. 1999).  Accepting all reasonable inferences from the evidence which support the verdict, the court will uphold the convictions if a reasonable fact-finder could have reached a conclusion of guilt beyond a reasonable doubt.  *United States v. Lopez*, 985 F.2d 520, 524 (11th Cir. 1993).  It is not necessary for the government to disprove every reasonable hypothesis of innocence, as a jury is "free to choose among reasonable constructions of the evidence."  *United States v. Jones*, 913 F.2d 1552, 1557 (11th Cir. 1990).

### B.  MOTION FOR NEW TRIAL

With regard to a challenge to an instruction to the jury, a district court has broad discretion in formulating a jury charge so long as the charge as a whole accurately reflects the law and the facts. *United States v. Turner*, 871 F.2d 1574, 1578 (11th Cir.1989).  A conviction should stand unless, after examining the entire charge, the issues of law were presented

inaccurately, the charge included crimes not contained in the indictment, or the charge improperly guided the jury in such a substantial way as to violate due process. *United States v. Richardson,* 233 F.3d 1285, 1292 (11th Cir. 2000).

### III.  DISCUSSION

The Defendants ask the court to grant them a judgment of acquittal or a new trial. In support of this motion, the Defendants argue primarily that the United States failed to sufficiently prove an effect on interstate commerce, which is an element of a Hobbs Act violation. *United States v. Castleberry*, 116 F.3d 1384, 1386 (11th Cir. 1997). The Defendants also challenge the use of a jury instruction regarding the extent to which an effect on interstate commerce must be established as an element of a Hobbs Act violation. The court turns to the sufficiency of the evidence argument first.

#### A.  Motion for Judgment of Acquittal Based on Sufficiency of the Evidence

The Eleventh Circuit has "concluded as a matter of law that the Hobbs Act only requires a minimal effect on interstate commerce to support a conviction." *United States v. Castleberry,* 116 F.3d 1384, 1387 (11th Cir. 1997). In the instant case, Andrea Jackson, the City of Auburn Finance Director and Treasurer, testified that the fines paid the City and court costs which accrue to the City from tickets issued for violations of the law go into the City's General Fund budget. Tr. at 421. She testified that if fewer revenues are paid in to the General Fund, that reduces the expenditures which can be made, including expenditures for supplies such as firearms and gasoline. *Id.* at 422:21-3, 423:10-5. The United States also presented evidence that firearms and gasoline used by the City of Auburn travel in interstate commerce. *Id.* 417:16-418:6, 433:3-6.

3

The Defendants have challenged both the sufficiency of the evidence that funds due the General Fund of the City of Auburn were lost, and the sufficiency of evidence that any loss of funds through Hobbs Act violations was substantial enough to constitute an effect on interstate commerce. Rather than address the interstate commerce element of the counts of the Superceding Indictment in strictly numerical order, the court will address together counts involving similar arguments beginning with Count 4; then addressing Counts 5, 8, and 9; then Count 1; and finally Counts 6, 7, and 10.

As to Count 4, Defendants White and Floyd were convicted of a Hobbs Act violation for accepting money from a person named Recco Cobb in exchange for favorable treatment with regard to a traffic citation issued to Recco Cobb for fleeing and attempting to elude. The United States introduced into evidence the Alabama Uniform Traffic Ticket and Complaint which was issued to Recco Cobb. Recco Cobb testified at trial that he did not go to court and pay his ticket, but instead went to Defendant Floyd who told him he could get the ticket taken care of for $900. Tr. at page 135: 12-19. In its brief, the United States points to back of the ticket where it is noted that the ticket was *nol prossed* and no costs or fines assessed. See Govt. Ex. 6.

Although there was no evidence presented as to the specific amount of fines or costs which would have accrued to the City of Auburn had Recco Cobb paid the ticket for fleeing and attempting to elude arrest, because Recco Cobb testified that he did not pay the ticket, but instead went to Defendant Floyd to have the ticket taken care of, the jury could reasonably infer that the ticket he was given would have entitled to the City to fees and costs.[1] Therefore, there

---

[1] The Defendants argue that a balance of fees and costs due by Recco Cobb as reflected in Government's Exhibit 6 does not establish fees and costs which would have been assessed pursuant to his arrest for fleeing and attempting to elude arrest. The portion of Government's

was evidence of fees and costs which would have been paid to the City of Auburn, but were not paid as a result of the Hobbs Act violation.

Counts 5, 8, and 9 concern, at least in part if not solely, speeding tickets. Count 5 involves a woman named Jamillah McCray who was charged with speeding, but the ticket was *nol prossed* after she spoke with Defendant Floyd and he withdrew money from her account. The United States points to the testimony of Officer Myron Thornton when he was asked how much a speeding ticket generally costs in terms of fines and court costs, and Officer Thornton responded that he had heard "the judge say $112." Tr. 115:22-25.

Count 8 concerns speeding, driving under the influence, and carrying a weapon without a permit charges against an individual named Daniel Todd. The United States points to testimony that the officer who issued the tickets would not drop the driving under the influence charge, but did *nol pross* "without costs," the firearms charge and the speeding charge. *See* Govt. Ex. 11, Govt. Ex. 8.

Count 9 concerns a speeding ticket issued to a man named Elhadji Ka. Elhadji Ka testified that he received the ticket and attempted to pay the fine, but ultimately agreed to pay Defendant White to have the ticket voided. Tr. 241: 15-242:22. The United States also points out that Elhadji Ka testified that $112 was the price of the ticket. *Id.* at 248: 13-15.

The court concludes, viewing the evidence of fines and costs associated with speeding tickets in the light most favorable to the government, that there is sufficient evidence for a reasonable jury to conclude that fines and costs would have been due to the City of Auburn as a

---

Exhibit 6 which is pointed to by the Defendants, however, is presented by the United States to show fees which would have been assessed as to another individual, Monkevin Cobb. That evidence will be discussed below, in connection with the discussion of Count 7.

result of the speeding tickets issued to Jamillah McCray, Daniel Todd, and Elhadji Ka in Counts 5, 8, and 9. Also, a reasonable jury could have concluded that fines and costs would have been due to the City of Auburn as a result of Daniel Todd's firearms charge. In addition, there was sufficient evidence that the fines and costs which were due the City of Auburn were not paid into the City of Auburn General Fund because of the Hobbs Act violations.

As to Count 1, the conspiracy count, the fines and costs which would have been paid to the City, but were not, for the tickets in Counts 4 and 5 establish the loss of revenue necessary for the interstate commerce element of the conspiracy charge in Count 1.[2]

The United States attempted to prove the interstate commerce element of Counts 6, 7, and 10 by relying on evidence of fines and costs assessed against other individuals. For example, Count 6 concerns charges against a man named Monkevin Cobb for carrying a pistol without a permit and resisting arrest, the former of which was dismissed because the weapon was later lost. The United States points to Corporal Scott Mingus' testimony that Monkevin Cobb had a pistol fall out of his waistband so he was "charged with the pistol charge," Tr. 184-14-15, and to Govt. Exhibit 37 which reflects that Monkevin Cobb was charged with "carry pistol w/o permit." By way of comparison, the United States points to evidence from Count 8, involving Daniel Todd, that Officer Crook testified that Daniel Todd had a concealed weapon charge, and that documentary evidence indicated that the charge of "carrying concealed weapon," Exhibit 10,

---

[2] The briefing as to this Count has given rise to some confusion. Although the Defendants did not move for judgment of acquittal as to elements of the conspiracy count other than the interstate commerce element, the United States has pointed to evidence of agreement to support the conviction in Count 1 in the form of evidence presented through Counts 2 and 3. In response, the Defendants have argued that there was no interstate commerce connection shown with respect to Counts 2 and 3. The court, however, has only addressed interstate commerce arguments with respect to counts as to which the Defendants were convicted at trial.

against Daniel Todd was "nol pros w/o costs." Govt. Ex. 11. The United States argues that a jury could infer that the weapons case against Monkevin Cobb would have caused him to pay costs because the charge against Daniel Todd had costs associated with it.

The effect on interstate commerce, by law, need only be minimal to establish a Hobbs Act violation. Under the United States' interstate commerce theory in this case, however, there must be evidence that the City of Auburn was deprived of revenue which would have been in the General Fund from which items are purchased which travel in interstate commerce. With respect to Count 6, the court cannot conclude that a rational jury could have reasonably inferred from the fact that there were costs associated with a "concealed weapon" charge against Daniel Todd, that there would have been costs associated with Monkevin Cobb's charge of "carry pistol w/o permit." While it may be that the charges against the two men are identical, the United States has pointed to no testimony to that effect, and there was no testimony presented that all weapons charges are accompanied by a fine.[3]

The distinction between the court's analysis of Count 6 and the court's analysis of Count 8, involving the speeding ticket against Daniel Todd, and Count 4, involving the charges of fleeing and attempting to elude arrest against Recco Cobb, is that with respect to Count 6, there was no evidence that there were fines or costs which Monkevin Cobb specifically would have had to have paid, nor evidence that the type of charge involved in Count 6 is generally assessed fines or costs.

---

[3] There also was no testimony to the effect that a fine is assessed generally as to all charges when a ticket is issued. In fact, there is at least some documentary evidence to the contrary. See Govt. Ex. 3, p. 2.

Count 7 relates to a second incident regarding Monkevin Cobb in which he was apprehended by Defendant White while trespassing in a housing project, and while possessing marijuana and a weapon. Monkevin Cobb paid cash to White at the scene and was never charged with these offenses. The United States says that the jury had evidence before it that the firearms charge with which Monkevin Cobb could have been charged carried with it costs because Officer Crook testified in regard to the charges *nol prossed* for Daniel Todd that Daniel Todd did not have to pay costs. The United States also argues that the jury had evidence before it that Recco Cobb had been assessed a fine for trespassing, and so could have inferred that a similar fine would have been assessed against Monkevin Cobb for trespassing. The United States finally points to an exhibit regarding another individual, Tyree Floyd, which indicates that the fines and costs of marijuana possession in Tyree Floyd's case were $250. *See* Govt. Ex. 3, p. 2.

With respect to the weapon charge against Monkevin Cobb, a stated above, the court has found that the evidence adduced in the case is not sufficient for the jury to infer that a fine would have been imposed on Monkevin Cobb for carrying a weapon as it relates to Count 6, because there was no evidence that the weapons charges were the same. The court finds that it is even less reasonable to draw an inference of costs with respect to Count 7 because Monkevin Cobb was asked at trial whether he was charged with being a felon in possession of a firearm, Tr. 197-21-23, which is a different charge from the charge against Daniel Todd. With respect to the marijuana possession charge which could have been brought against Monkevin Cobb, the evidence pointed to by the United States is that an individual named Tyree Floyd was assessed a fine of $250.00 for "possession of marijuana 2nd degr." Govt. Ex. 3, p. 2. The court cannot

8

conclude that a jury could reasonably infer from the fact that a fine was assessed against Tyree Floyd for that specific charge, that the marijuana possessed by Monkevin Cobb would have resulted in the same charge.  Furthermore, unlike the evidence regarding the speeding charges in this case, there was no testimony presented that marijuana possession charges generally result in a fine.  Finally, with respect to the trespass charge, the evidence regarding Recco Cobb to which the United States has pointed for comparison was that Recco Cobb was assessed a $245 fee for a charge of trespass third degree and he testified that he paid a fine for trespassing.  No evidence was presented, however, that Monkevin Cobb's trespass would be considered trespass third degree.  Again, unlike the counts involving tickets for speeding, there was no evidence presented that charges of trespass generally result in fines.

Count 10 involves window tint and lane change traffic violation charges against an individual named Jarvus Ware which were dropped, and a driving under the influence ("DUI") charge as to which Jarvus Ware was allowed to plead as a youthful offender.  The United States points to evidence that Jarvus Ware was charged $692 in fines and court costs for his DUI, while Daniel Todd was charged $1,100 for his DUI charge, and argues that the jury reasonably could have inferred that the reduction from adult to youthful offender resulted in less fines and costs being paid to the city.

The court has carefully reviewed the documentary evidence of the DUI's for these two individuals in Government's Exhibits 9 , p. 2 and 13, p. 2.  The differences in the amounts paid was in the amount of court costs, not the fine assessed.  That is, Government Exhibit 13 states that Jarvus Ware was assessed a $600 fine, and then reflects that the amount of $472 in court costs is marked out, and the amount of court costs assessed is $92. Govt. Ex. 13, p.2.  Daniel

9

Todd was assessed a $600 fine and $472 in court costs. Govt. Ex. 9, p.2. Without explanation as to the reason for the difference in court costs, the court cannot conclude that a reasonable inference could be drawn by the jury that the difference was due to the youthful offender plea. In addition, at trial, Andrea Jackson testified that while some court costs are paid into the City of Auburn's General Fund, other court costs are collected by the City, but are due to the State, and so are not considered revenue of the City of Auburn. Tr. 424: 2-11. Therefore, because the difference in the payment made by Jarvus Ware was in the amount of court costs paid, and there was no evidence to establish that the costs which were paid would have been paid to the City rather than the State,[4] the element of minimal effect on interstate commerce also was not proven beyond a reasonable doubt as to Count 10 on this basis.

Accordingly, the court concludes that the Motion for Judgment of Acquittal is due to be GRANTED as to Counts 6, 7, and 10.

The next argument raised by the Defendants in support of the Motion for Judgment of Acquittal is that even if there was sufficient evidence that fines and costs would have been due to the City of Auburn in the absence of Hobbs Act violations, the United States has failed to show that the absence of those fines or costs had the requisite effect on interstate commerce. The Defendants point to Government's Exhibit 34, the City of Auburn General Fund balances for 1999-2005, and argue that the City's revenues so exceeded expenditures that the small amounts of money lost when the fines and costs pointed to in this case were not paid could not have

---

[4] There was no testimony adduced that the State uses such funds for purchases of goods which have traveled in interstate commerce.

affected interstate commerce. The Defendants also state that no evidence was presented as to the timing of the payment of fines and costs.

As outlined above, the United States presented evidence at trial that if fewer fines and costs are paid into the General Fund of the City of Auburn, there is a reduction in expenditures which can be made for supplies such as firearms and gasoline, which travel in interstate commerce. This type of evidence was relied upon by the Eleventh Circuit in the *Castleberry* case in its determination that there was sufficient evidence of a minimal effect on interstate commerce to sustain a Hobbs Act conviction. In *Castleberry*, the United States presented various types of evidence to establish an effect on interstate commerce, including the effect on the general fund budget. The Eleventh Circuit explained as follows:

> The Government also presented evidence that fines paid in connection with DUI offenses went into the City of Atlanta's general fund. Out of the general fund, the City of Atlanta purchased goods from companies involved in interstate commerce. For example, Dr. William McLemore testified that because the State of Georgia had no oil refineries, all of the gasoline purchased with money from the City's general fund came from interstate commerce. Pursuant to state law, the City of Atlanta cannot run a deficit. Because London and Castleberry were fixing DUI cases, the City of Atlanta did not collect all the fines it was entitled to and consequently Castleberry's actions decreased the amount of revenue the City was able to spend in interstate commerce.

*Castleberry,* 116 F.3d at 1388.

The evidence of the effect on the General Fund which was presented in the instant case falls within the rationale of *Castleberry*. This court concludes, therefore, that the evidence presented at trial in the instant case was sufficient for a rational jury to conclude that the requisite effect on interstate commerce element of Counts 1, 4, 5, 8, and 9 was proven beyond a reasonable doubt. The Motion for Acquittal is, therefore, due to be DENIED as to Counts 1, 4, 5, 8, and 9.

B.  Motion for New Trial Based on Jury Charge

The Defendants have argued that it was improper for this court to charge the trial jury that "It is only necessary for the Government to prove a minimal effect on interstate commerce." The Defendants concede that this language was used by the Eleventh Circuit in the *Castleberry* case, but argue that because it was used there in the context of the sufficiency of evidence, rather than approved specifically as a jury charge, it should not have been charged to the jury in this case.  The Defendants further argue that this jury charge added a term not present in that Hobbs Act itself and, therefore, violated the Defendants' Fifth Amendment rights to due process.

The relevant charge on the interstate commerce requirement which was given to the jury in this case was as follows:

> While it is not necessary to prove that the Defendant specifically intended to affect commerce, it is necessary that the Government prove that the natural consequences of the acts alleged in the indictment would be to delay, interrupt or affect 'commerce,' which means the flow of commerce or business activities between a state and any point outside of that state.  It is only necessary for the Government to prove a minimal effect on interstate commerce.

Court's Instructions to the Jury, page 10.  It is Eleventh Circuit law that "the Hobbs Act only requires a minimal effect on interstate commerce to support a conviction." *Castleberry,* 116 F.3d at 1387.  The charge given, therefore, is a correct statement of the law and does not entitle the Defendants to a new trial in this case.

### III.  CONCLUSION

For the reasons stated above, the Defendants' Joint Motion for Judgment of Acquittal or New Trial (Doc. #191)  is due to be and is hereby ORDERED GRANTED in part and DENIED in part as follows:

    1.  The Joint Motion for Judgment of Acquittal is GRANTED as to Counts 6, 7, and 10.

    2.  The Joint Motion for Judgment of Acquittal or New Trial is DENIED in all other respects.

DONE this 2nd day of February, 2007.

    /s/ W. Harold Albritton

W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE