Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY AL 36104-4055

January 10, 2008

**Appeal Number: 07-11793-EE**
Case Style: USA v. Tyrone White
District Court Number: 05-00234 CR-E

TO:   Debra P. Hackett

CC:   Russell Turner Duraski

CC:   Jeffery C. Duffey

CC:   Todd A. Brown

CC:   Andrew O. Schiff

CC:   Administrative File

# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

January 10, 2008

Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY AL 36104-4055

**Appeal Number: 07-11793-EE**
Case Style: USA v. Tyrone White
District Court Number: 05-00234 CR-E

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's decision</u>, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)

# United States Court of Appeals
For the Eleventh Circuit

No. 07-11793

District Court Docket No.
05-00234-CR-E

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov 29, 2007
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

versus

TYRONE WHITE,
ADAM FLOYD,

        Defendants-Appellants.

A True Copy Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

---

Appeal from the United States District Court
for the Middle District of Alabama

---

JUDGMENT

    It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
JAN 1 0 2008
U.S. COURT OF APPEALS
ATLANTA, GA

Entered: November 29, 2007
For the Court: Thomas K. Kahn, Clerk
By: Harper, Toni

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 07-11793
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 29, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00234-CR-E

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TYRONE WHITE,
ADAM FLOYD,

Defendants-Appellants.

Appeal from the United States District Court
for the Middle District of Alabama

(November 29, 2007)

Before BLACK, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Tyrone White and Adam Floyd appeal their convictions for conspiracy and extortion, in violation of 18 U.S.C. §§ 2, 371, and 1951(a). White also appeals his convictions for intimidating a witness and corruptly altering or destroying a recording with the intent to impair its availability for use in an official proceeding, in violation of 18 U.S.C. §§ 1512(b)(3) and (c)(1).

## I.

After a joint FBI and Auburn Police Department investigation into possible improprieties by individual Auburn police officers, agents suspected that Officer Tyrone White and businessman Adam Floyd had engaged in a scheme to "fix" traffic tickets for individuals in exchange for payments of hundreds of dollars. On May 2, 2006, a grand jury returned a third superseding indictment against White and Floyd charging them with knowingly conspiring to commit extortion affecting interstate commerce, in violation of 18 U.S.C. § 371 (count 1); and aiding and abetting each other in knowingly committing extortion affecting interstate commerce through wrongful use and threat of use of fear and under color of official right in violation of the Hobbs Act, 18 U.S.C. § 1951(a) (counts 2 through 5).

The grand jury also indicted White with six additional counts of knowingly committing extortion affecting interstate commerce through the wrongful use and

2

threat of use of fear and under color of official right, in violation of the Hobbs Act, 18 U.S.C. § 1951(a) (counts 6 through 12). Count 12 of the indictment alleged that White had violated the Hobbs Act by extorting Padro Smith. In counts 13 and 14, the grand jury indicted White with knowingly intimidating and corruptly persuading Smith in an attempt to hinder or prevent the communication of information to a law officer, in violation of 18 U.S.C. § 1512(b)(3) (count 13); and corruptly altering and destroying a recording containing a conversation between himself and Smith with the intent to impair the recording's availability for use in an official proceeding, in violation of § 1512(c)(1) (count 14).

At the end of the government's case-in-chief, the defendants successfully moved the district court for judgment of acquittal on several counts of the indictment. The district court granted Floyd's motion for judgment of acquittal to the extent that there was no evidence to sustain a conspiracy charge against him relating to counts 6 through 12. The district court also granted White's motions for judgment of acquittal on counts 11 and 12. The defendants did not present any evidence, and the remaining counts were sent to the jury. The jury found White guilty of counts 1, 4–9, 10, 13, and 14 of the indictment, and it found Floyd guilty of counts 1, 4, and 5 and acquitted him of counts 2 and 3. After the jury verdict was announced, White successfully moved for a judgment of acquittal on counts 6,

7, and 10 of the indictment after arguing that there was insufficient evidence to sustain a conviction for those counts.

The district court then entered a final judgment of conviction against White for counts 1, 4, 5, 8, 9, 13, and 14 of the indictment and sentenced him to thirty months imprisonment. The court also entered a final judgment of conviction against Floyd for counts 1, 4, and 5 and sentenced him to twenty-one months imprisonment.

The defendants make four arguments on appeal: (1) Floyd argues that the district court erred in instructing the jury that in order to meet the jurisdictional requirement for the Hobbs Act charges, it was only necessary for the government to prove that his actions had a "minimal effect" on interstate commerce; (2) both defendants argue that there was insufficient evidence of an effect on interstate commerce to support their convictions on the Hobbs Act charges; (3) White argues that the district court erred by denying his motions for judgment of acquittal on counts 13 and 14, the witness intimidation and destruction of evidence charges, because the court granted his motion for judgment of acquittal on the Hobbs Act violation with respect to that witness; and (4) White argues that his first attorney, Julian McPhillips, who did not represent him at trial, was constitutionally ineffective because his actions led the government to charge White with counts 13

and 14 of the indictment.

## II.

Floyd contends that the district court erred in instructing the jury that in order to find him guilty on the Hobbs Act charges, it was only necessary for the government to prove that his actions had a minimal effect on interstate commerce. He concedes that Eleventh Circuit law holds that only a minimal effect on interstate commerce is necessary for a Hobbs Act violation. Floyd argues, however, that in the district court's jury instructions the word "minimal" modified the word "effect" and manipulated the jury, thus violating his due process rights. Furthermore, according to Floyd, the district court's use of the word "minimal" was an incorrect statement of the law and was confusing to the jury.

This is what the district court instructed the jury about the jurisdictional requirement of the Hobbs Act:

> While it is not necessary to prove that the defendant specifically
> intended to affect commerce, it is necessary that the government prove
> that the natural consequences of the . . . acts alleged in the indictment
> would be to delay, interrupt, or affect commerce, which means the
> flow of commerce or business activities between a state and any point
> outside of that state. It is only necessary for the government to prove
> a minimal effect on interstate commerce. You are instructed that you
> may find that the requisite effect upon commerce has been proved if
> you find beyond a reasonable doubt that the Auburn Police
> Department lost revenues which would have been used to purchase
> firearms, vehicles, and gasoline.

There is nothing confusing about that instruction. It is consistent with our decisions in this area of the law and specifically with our holdings that the "jurisdictional requirement under the Hobbs Act can be met simply by showing that the offense had a 'minimal' effect on commerce." United States v. Verbitskaya, 406 F.3d 1324, 1331–32 (11th Cir. 2005) (citation omitted); see also United States v. Summers, 598 F.2d 450, 454 (5th Cir. 1979)[1] ("Cases construing the Hobbs Act have repeatedly emphasized that the statute's plain terms outlaw interference with interstate commerce 'in any way or degree.' All that is necessary is that the impact of the extortion affect interstate commerce to a Minimal degree." (citations omitted)).

### III.

Both defendants contend that there was insufficient evidence to convict them of the conspiracy and substantive Hobbs Act charges because the government failed to prove beyond a reasonable doubt the jurisdictional element of the offenses—that their actions affected interstate commerce. Therefore, according to the defendants, the district court erred by failing to grant their motions for judgment of acquittal on counts 1, 4, 5, 8, and 9.

---

[1] In our en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

We review de novo challenges to the sufficiency of the evidence. United States v. Futrell, 209 F.3d 1286, 1288 (11th Cir. 2000). The evidence is viewed in the light most favorable to the government, and we draw "all reasonable inferences and credibility determinations in favor of the verdict." United States v. Simpson, 228 F.3d 1294, 1299 (11th Cir. 2000). We will affirm the jury's verdict "if a reasonable juror could conclude the evidence establishes [the defendants'] guilt beyond a reasonable doubt." United States v. Hasson, 333 F.3d 1264, 1270 (11th Cir. 2003).

"A Hobbs Act conspiracy can be proved by showing a potential impact on interstate commerce," Veribitzkaya, 405 F.3d at 1335. To sustain a substantive Hobbs Act violation, the government must prove an actual effect on commerce. United States v. Diaz, 248 F.3d 1065, 1084 (11th Cir. 2001). However, "all that is required is a minimal impact," id., and a mere "depleting of assets" of a business engaged in interstate commerce will meet this requirement, United States v. Rodriquez, 218 F.3d 1243, 1245 (11th Cir. 2000).

In United States v. Castleberry, 116 F.3d 1384 (11th Cir. 1997), we found that the government had introduced sufficient evidence of an impact on interstate commerce to sustain the defendants' convictions for Hobbs Act violations for their DUI ticket "fixing" scheme where the government: (1) showed through expert

7

testimony that unprosecuted DUI cases had an economic impact on interstate commerce; and (2) presented evidence that the defendants' actions in fixing tickets for DUI violations had decreased the amount of revenue that went into the City of Atlanta's general fund, therefore inhibiting the city's ability to buy goods that traveled in interstate commerce. Id. at 1388.

The government presented evidence that the City of Auburn usually charged $112 for each speeding ticket issued. Moreover, the government showed that money collected from traffic fines and court costs went into the city's general fund, which was used to buy firearms, city automobiles, gasoline, and police cruisers. The government also presented evidence that many of these goods that the city purchased traveled in interstate commerce. City Treasurer Andrea Jackson stated that any decrease in the general fund, even a $500 reduction in fines due to uncollected tickets, would impair the city's ability to purchase out-of-state goods.

Because the evidence demonstrated that any uncollected fine could result in a decrease in the city's ability to purchase out-of-state goods, the government clearly introduced sufficient evidence that the defendants' actions had a potential effect on interstate commerce. This is all that is required to sustain their conspiracy convictions under count 1. See Veribitzkaya, 405 F.3d at 1335. The government also presented sufficient evidence showing that there was an actual

impact on interstate commerce, as required for the substantive Hobbs Act charges in counts 4, 5, 8, and 9.

Floyd and White were both convicted of the substantive Hobbs Act violations involving Recco Cobb (count 4) and Jamillah McCray (count 5). With respect to count 4, the government presented evidence that Cobb paid Floyd $900 to have a fleeing and eluding ticket dismissed, and eventually Floyd had White get the ticket dismissed. Although Cobb testified that as a result of the defendants' actions, he did not have to go to city hall to pay a fine for the fleeing and eluding ticket, the government provided no evidence of the specific monetary fine associated with Cobb's offense. Nevertheless, viewing the evidence in a light favorable to the government, a jury reasonably could have inferred from Cobb's statement that as a result of the defendants' actions in getting the ticket dismissed, he did not have to go to city hall to pay a fine that such an offense would otherwise have resulted in the payment of a monetary fine.

Regarding count 5, the government presented evidence that Floyd offered to pay McCray's speeding ticket and that he later had White approach another officer who agreed to dismiss the ticket. The evidence showed that after the ticket was nolle prossed, the court ordered that no fines or costs be imposed. As we mentioned earlier, the government presented evidence that the city ordinarily

9

would have collected $112 from the ticket.

White was additionally convicted of the substantive Hobbs Act violations involving Daniel Todd (count eight) and Elhadji Ka (count nine). With respect to count 8, the government presented evidence that, after receiving payment from Todd, White had an officer <u>nolle pross</u> Todd's speeding ticket, which otherwise would have resulted in a $112 fine. Regarding count 9, the government showed that, after receiving payment from Ka, White had his speeding ticket dismissed, which, again, would otherwise have resulted in a $112 fine.

Drawing all reasonable inferences in favor of the government, a juror reasonably could have inferred that without the defendants' interference, the city would have collected a fine or court fee, or both, as a result of each dismissed ticket. The defendants' actions in getting the tickets dismissed without the imposition of any costs or fines depleted the city's assets and hindered its ability to purchase out-of-state goods, albeit not by a large amount. Although the government did not have an expert witness testify about the economic impact of unprosecuted tickets, as it did in <u>Castleberry</u>, 116 F.3d at 1388, the government did present sufficient evidence that the tickets "fixed" by White and Floyd depleted the city's ability to purchase goods that traveled in interstate commerce. Therefore, the government produced sufficient evidence for a reasonable jury to

conclude that the defendants' ticket "fixing" scheme minimally affected interstate commerce as required for the Hobbs Act conspiracy and substantive counts. See Rodriquez, 218 F.3d at 1245 (concluding that the depletion of $2,090 of assets of a hotel engaged in interstate commerce will meet the jurisdictional requirement of the Hobbs Act); United States v. Guerra, 164 F.3d 1358, 1361 (11th Cir. 1999) (holding that robbery of $300 from a gas station that sold out-of-state fuels was sufficient to meet the jurisdictional requirement of the Hobbs Act where the station had to shut down for two hours for the investigation and lost business over the next several days).

## IV.

White contends that because the district court granted his motion for judgment of acquittal on count 12, the substantive Hobbs Act charge related to extorting Smith, it could not have found him guilty of count 13, intimidating Smith as a witness in violation of 18 U.S.C. § 1512(b)(3). Furthermore, according to White, since the district count granted his motion for judgment of acquittal on count 12, Smith was not a witness to any crime, and therefore count 14 should have been dismissed because the audio evidence of any alleged intimidation of Smith was irrelevant.

As to the first contention, in order to prove witness intimidation, in violation

11

of 18 U.S.C. § 1512(b)(3), the government must establish beyond a reasonable doubt that the defendant knowingly and willfully: (1) used intimidation, threats, or corrupt persuasion towards another person; (2) with the intent to hinder, delay or prevent the communication of information to a federal law enforcement officer or federal judge; (3) about the commission or the possible commission of a federal crime. See 18 U.S.C. § 1512(b)(3). We have stated that "[b]y its wording, § 1512(b)(3) does not depend on the existence or imminency of a federal case or investigation but rather on the possible existence of a federal crime and a defendant's intention to thwart an inquiry into that crime." United States v. Veal, 153 F.3d 1233, 1250 (11th Cir. 1998).

The government presented sufficient evidence to convict White of violating § 1512(b)(3). The government's evidence showed that White had recorded himself yelling at Padro Smith and accusing Smith of wearing a wire. Furthermore, White told Smith to tell authorities that he did not pay White money to fix traffic tickets, and he also told Smith that he knew where he and his mother lived. The evidence was that Smith sounded scared during the conversation.

Based on this evidence, a reasonable juror could have concluded that White intimidated Smith and urged him to present false information to federal investigators about White's possible Hobbs Act violations. Section 1512(b)(3) does not require that a defendant be convicted of the underlying crime, but only

that the individual intend to hinder the investigation of a possible crime, see Veal, 153 F.3d at 1250, which a reasonable juror could conclude is exactly what White intended to do here.

White's next contention is that since the district court granted his motion for judgment of acquittal on count 12, the substantive Hobbs Act violation involving Smith, it should have dismissed count 14, the destruction of evidence charge, because there was no crime for Smith to have witnessed, which means that the recording of their conversation was irrelevant. To prove that the defendant improperly destroyed or altered evidence, in violation of 18 U.S.C. § 1512(c)(1), the government must prove that the person corruptly altered, destroyed, or concealed an object "with the intent to impair the object's integrity or availability for use in an official proceeding." Although the district court did ultimately grant White a judgment of acquittal on the Hobbs Act charge in count 12, the witness intimidation charge in count 13 was still pending, and Smith—the subject of that charge—was clearly a witness to it.

The contents of the audio recording were directly relevant to whether White had intimidated Smith. In fact, one of the FBI agents who had been present at a meeting where the digital recording was played testified that after it was played, White's attorney, Julian McPhillips, stated that he could see how a jury might consider White's conduct, as revealed in that recording, to be witness intimidation.

13

There is no support for White's position that it is not a crime to intimidate a witness to a pending charge if the charge is later dismissed. Accepting that position would only encourage witness intimidation.

V.

Finally, White contends for the first time on appeal that the attorney who initially represented him, Julian McPhillips, provided ineffective assistance of counsel, in violation of the Sixth Amendment, because McPhillips' actions allegedly led the government to charge White with counts 13 and 14 of the indictment, the witness intimidation and destruction of evidence charges. We generally do not consider ineffective assistance of counsel claims on direct appeal because the record is insufficiently developed. United States v. Andrews, 953 F.2d 1312, 1327 (11th Cir. 1992). Instead, "[s]uch cases are usually resolved post-appeal in a habeas corpus proceeding, where an evidentiary hearing may be held." Id. Because White did not raise this claim before the district court, there was no opportunity to develop a record relevant to it even if the district court had been so inclined. Therefore, we will not consider this claim here.

**AFFIRMED.**

A True Copy Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia